STRAUSS et al. v. HOCH.   (No. 5636.)

(Supreme Court, Appellate Division, First Department.   May 15, 1914.)

DAMAGES (§ 12*)—BREACH OF CONTRACT—NOMINAL DAMAGES—PROFITS.

    Where defendant rented to plaintiffs a stand at the junction of certain walks at Coney Island for the sale of frankfurters, etc., agreeing to purchase from them all such food sold on the premises, and thereafter restricted access to plaintiffs' stand by constructing gates over one of the walks and charging an admission fee during certain hours to people who did not use defendant's bathing facilities, but the evidence was insufficient to show with any certainty the profits that plaintiffs lost by such acts, plaintiffs could recover only nominal damages for defendant's breach of contract.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. § 31; Dec. Dig. § 12.*]

Appeal from Trial Term, New York County.

Action by Bertha Strauss and another against Martha F. Hoch. Judgment for plaintiffs, and defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles Frankel, of New York City, for appellant.
J. Franklin Tausch, of New York City, for respondents.

LAUGHLIN, J.   This is an action to recover damages for a breach of a contract, by which the defendant rented to the plaintiffs a stand at the junction of Buschman's Walk and the Board Walk on the shore of the Atlantic Ocean at Coney Island, with the exclusive privilege of selling frankfurters, hot corn, hamburger steaks, and potato pancakes, and with an agreement on the part of the defendant to purchase of the plaintiffs any of these articles sold on the premises, known as Hoch's Arcade, which consisted of a hotel, restaurant, dance hall, and bathing pavilion adjacent to Buschman's Walk and to the Board Walk, for the period from May 1 to October 1, 1911, for which the plaintiffs paid to the defendant in installments the sum of $450; the last installment having been paid on the 15th or 18th day of July, 1911.

Buschman's Walk is a public way 28 feet wide, leading southerly from Surf avenue to premises of which the defendant was lessee, which lie between the southerly end of it and the Board Walk; this distance not being given. The private premises of which the defendant was lessee also abutted on either side of Buschman's Walk for some distance northerly of the southerly end thereof, and on either side of Buschman's Walk there were stores and the defendant's bathing houses. The defendant was also the owner of a building covering the premises of which she was lessee. At the time the contract was made, there is evidence tending to show that Buschman's Walk appeared as an open public way extending northerly from the Board Walk, and that the defendant's husband, who negotiated the contract

for her, represented to the plaintiffs, in effect, that it was always open and that hundreds of people passed through there. The principal breach of contract of which complaint is made consisted in the erection of a gate at the intersection of Buschman's Walk with the Board Walk, and also one on the line between Buschman's Walk as a public way and the defendant's premises, which shut off access to and from the ocean front, excepting by passing through the gates, for which a charge of ten cents was made between the hours of 7 and 12 o'clock in the morning, to all residents and sojourners at Coney Island in bathing suits who did not procure the bathing suits from the defendant. It appears that the defendant in this manner collected about $15 per month, and that many people turned back when they found that they could not pass through without paying. The reason assigned by the defendant for this course was that such people put on their bathing suits in their own houses or cottages and used defendant's premises as public property, enjoying also the protection afforded by life guards employed by her, and patronized neither her bathing establishment nor her restaurant, and on leaving the water scattered sand and water along the passageway, along which she had tables in connection with her restaurant, thus rendering the same unattractive and annoying to her guests. During the rest of the day, after the crowds arrived and when the principal business was done, the gates were left open and people were free to come and go at will, with the exception that on some occasions the defendant's husband would interfere with and attempt to prevent people in bathing suits, who had not procured their suits from defendant, from passing through. There is evidence that the gates had been specially constructed for this purpose long before and had been thus maintained for many years, with the exception of a period when special policemen were permitted to answer the purpose; but there is no evidence that the plaintiffs were aware of those facts, and they are entitled to have the case considered in the light of testimony offered in their behalf to the effect that it was represented to them that there would be no gates across Buschman's Walk.

It is also claimed that the defendant violated the contract in selling frankfurters not purchased from the plaintiffs, and there is evidence tending to show one such violation.

The plaintiffs' stand was in the southwesterly corner of the dance hall. From the dance hall one door led onto the Board Walk, and three others onto Buschman's Walk. There is evidence tending to show that access to the plaintiffs' stand could be had from the dance hall, but there is other evidence to the effect that it would be necessary to leave the dance hall to obtain access thereto, either by the Board Walk or by Buschman's Walk. At times after plaintiffs paid the last installment of rent some of the doors were closed, while people were in the dance hall, and the plaintiffs claim that this resulted in diverting business from them, particularly by closing the door nearest to their stand which opened onto Buschman's Walk, and in depriving them of business. There is no allegation in the complaint that this constituted a breach of the contract, nor is there any evidence of an agreement on the part of the defendant, at the time the stand was leased, to keep the doors

of the dance hall open. This objection, however, was not taken on the trial.

The damages were estimated by the jury from testimony given by the plaintiff Strauss showing the gross daily receipts from May 6th to September 17th, the day on which the plaintiffs closed the stand, inclusive, which she testified aggregated $1,167.16. This testimony was materially discredited by testimony given by the defendant, and the plaintiff Strauss conceded, with respect to the amount of the daily receipts thus shown, that she might be mistaken; but the account from which she testified shows that the receipts after July 18th were considerably less than they had been before that date. The evidence shows, and it is a matter doubtless of which the court might take judicial notice, that the number of people visiting Coney Island, a summer resort, depends largely upon the weather conditions; and it also appears that the latter part of that season, commencing with the 1st of August, was rainy.

It is contended that it was competent for the jury on this evidence to find that the falling off of the receipts was due to the closing of the passageway and the doors of the dance hall, and that, if the public had been permitted free passage, many more would have passed through and would have patronized the plaintiffs' stand; and on that theory the verdict was rendered for plaintiffs' supposed loss of profits. Profits in such case would necessarily depend on numerous changeable and uncertain conditions. The sales would necessarily depend on the energy of the venders, and to some extent on the quality and attractiveness of the food, and of course on the number of patrons. I think that the evidence fails to show that any damages or loss of profits resulted from the closing of the gates or doors. There is no basis from which to determine even approximately the number of people who would have passed through Buschman's Walk and did not owing to the closing of the gates during the morning hours, or of the doors, or what percentage of them, if any, would have patronized the plaintiffs, or to what extent, or what loss of profits, if any, there has been. The evidence adduced on the part of the plaintiffs sufficiently tends to show a breach of contract; but it fails to show the damages with a sufficient degree of certainty to warrant a determination with respect to the amount thereof over nominal damages, and in such case it cannot be left to the jury to speculate and thus estimate the loss of profits and render a verdict therefor as damages. Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58; White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13; U. S. T. Co. v. O'Brien, 143 N. Y. 284, 38 N. E. 266; Dodds v. Hakes, 114 N. Y. 260, 21 N. E. 398; Benyaker v. Scherz, 103 App. Div. 192, 92 N. Y. Supp. 1089.

I am of opinion, therefore, that the plaintiffs failed to present evidence entitling them to recover more than nominal damages. It is possible that evidence may be obtainable to show damages directly attributable to the things of which plaintiffs complain and sufficiently definite in amount to warrant any assessment thereof against defendant if she be found guilty of a breach of her contract; and the difference between the value of the lease with and without Buschman's Walk thus

cut off by gates, and the doors to the dance hall closed or open, be capable of competent proof, such damages may be recoverable if the facts are found as charged by the plaintiffs. Witherbee v. Meyer, supra; Dodds v. Hakes, supra; Benyaker v. Scherz, supra.

Since the defendant did not concede liability for nominal damages and ask for, or consent to, the direction of a verdict in favor of the plaintiffs therefor, it is not entirely clear that it would be competent for the court on appeal to reduce the recovery and affirm, and inasmuch as the plaintiffs may be able to show substantial recoverable damages on a new trial, the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.