ISAAC H. BLANCHARD COMPANY, Appellant, Respondent, *v.* ROME METALLIC BEDSTEAD COMPANY, Respondent, Appellant.

First Department, July 11, 1918.

Landlord and tenant — action for breach of covenant in lease — pleading — refusal of landlord to allow tenant to install power plant — damages — speculative profits from sale of electric current to landlord — liability of landlord to comply with order requiring installation of fire alarm signal system enacted after execution of lease — failure of landlord to comply with provisions of lease for arbitration of disputed questions.

Where in an action by a tenant for the breach of a covenant in a lease under which the defendant landlord agreed with the plaintiff that it would comply with all reasonable orders and regulations of the New York Insurance Exchange and of the New York Board of Fire Underwriters, the plaintiff merely alleged the making of the lease, the provisions of the covenant and that it was damaged by the defendant's breach thereof, and refused an offer to amend its complaint so as to allege the defendant's refusal to install a sprinkler system as ordered by the city authorities, the cause of action was properly dismissed as the complaint set forth merely inferences or conclusions without facts showing a breach.

In an action for the breach of covenants and agreements by a landlord in refusing to permit its tenant to install, at its own expense, an electric power and light generating plant, the profits which the plaintiff might have made by furnishing power to the defendant for a period of twenty years, or the duration of the lease, are too problematical and speculative to furnish a basis for damages.

The mere fact that for the first or second year of the lease a profit might have been made is no basis for finding that similar profits would have been made for the remaining period of the lease.

Since the defendant's sole liability under such covenant was limited to the taking of sufficient power from the plaintiff to enable it to heat and light the building, run the elevators and take general care of the premises, and since it had offered the plaintiff requisite space in which to install its power plant and had further offered to make a contract to use continuously a minimum of current sufficient for its purposes, it had complied with all its obligations and plaintiff had no cause of action.

Where, after the execution of the lease of a building as a factory, the industrial board of the city of New York demanded that such building be equipped with a fire alarm signal system because of the nature of the building itself and not because of the business therein conducted by the plaintiff, it was the duty of the landlord to comply with said order at its own expense, notwithstanding a covenant in the lease that the tenant would faithfully fulfill and comply with all reasonable orders, rules and regulations of the State, municipal or Federal authorities.

In an action by a tenant against its landlord for breach of covenants of the lease a counterclaim alleging that the plaintiff had violated a provision of said lease by making structural alterations in the premises should be dismissed where it is neither alleged nor sought to be proved that the landlord had complied with the express provisions of the lease for the arbitration of disputes between the parties and the termination of the lease for persistent violation of covenants.

CROSS-APPEALS by the plaintiff, Isaac H. Blanchard Company, and by the defendant, Rome Metallic Bedstead Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of July, 1917, upon the verdict of a jury as to certain causes of action, certain other causes of action and counterclaims having been dismissed by the court during the progress of the trial, and a verdict having been directed as to another of the causes of action. The plaintiff also appeals from so much of an order entered in said clerk's office on the 13th day of June, 1917, as dismisses the complaint as to the eighth, ninth and fourteenth causes of action. The defendant appeals from so much of said order as dismisses the answer as to the fifth and fourth counterclaims.

*Harold H. Bowman* of counsel [*Smith & Bowman,* attorneys], for the plaintiff.

*Alfred G. Reeves* of counsel [*William P. Dalton* with him on the brief; *Reeves & Todd,* attorneys], for the defendant.

DOWLING, J.:

This action was brought to recover the damages claimed to have been sustained by plaintiff by reason of certain alleged breaches by defendant of a lease under seal. Defendant set up various counterclaims for matters arising out of the same lease. Plaintiff has recovered judgment upon its third cause of action in an amount for which defendant had already offered judgment. Various causes of action and counterclaims were withdrawn upon the trial, and others were dismissed. Plaintiff upon this appeal withdrew its contention that the ninth cause of action had been improperly dismissed, thus limiting its appeal to the dismissal of the eighth and fourteenth causes of action. Defendant seeks a reversal of so much of the judgment as dismisses its fourth and fifth counterclaims. The lease in question is dated January 31, 1912, and is under seal. Thereby defendant, as landlord, leased to plaintiff, as tenant, the fifth, sixth, seventh and eighth floors of the building Nos. 418 to 426 West Twenty-fifth street, borough of Manhattan, city of New York, together with certain space on the fourth floor and a pent house to be erected on the roof, for the period of twenty years and ten months from May 1, 1912. The building was then in course of construction and the landlord agreed to have it ready for occupancy by March 15, 1912, and between that date and the commencement of the lease the landlord was to supply elevator service, heat and light to enable the tenant to prepare its part of the building for its purposes and to remove its plant thereto. The premises thus leased to the tenant were " to be used by the Tenant, or its lessees, in its business of printing, lithographing, engraving, electrotyping, bookbinding, publishing, and all the various branches thereof, * * * or any other business not more hazardous than the business next hereinbefore specified and referred to, as may be desired by the Tenant, and for no purpose more hazardous; the amount of rent having been fixed in view of the purposes for which the premises are to be hired." The lease is a most voluminous document, evidently drawn with great care and intended to provide for every contingency that might arise affecting the rights or obligations of the respective parties. Such parts of it need

only be quoted as bear upon the questions involved in these appeals.

Considering first the plaintiff's appeal, we are called upon to decide the sufficiency of the eighth cause of action set forth in the complaint. This alleges the making of the lease in question and the incorporation of the parties thereto. It then is averred: "*Forty-seventh:* That, in and by the eighth subdivision of the 'Twelfth' paragraph of said indenture of lease, Exhibit 'A,' defendant covenanted and agreed with plaintiff that it would comply with all reasonable orders, rules and regulations of the New York Fire Insurance Exchange and of the New York Board of Fire Underwriters, necessary to obtain and retain the most favorable rate of insurance premium on property of the plaintiff in the said premises demised by said indenture of lease, Exhibit 'A'; and that, should the insurance rate on the property of plaintiff be increased beyond such rate on account of any act of defendant, or of any neglect of defendant to comply with the rules and regulations provided for, then defendant should be responsible to the plaintiff for any such excess insurance premiums which plaintiff might have to pay upon its property in the said demised premises.

"*Forty-eighth:* That defendant failed and neglected to comply with the reasonable orders, rules and regulations of the New York Fire Insurance Exchange and of the New York Board of Fire Underwriters; and that, by reason of such failure and neglect on the part of defendant, plaintiff was compelled to pay, and did pay, as insurance premiums upon its property in the said demised premises, and upon its use and occupancy of the same a sum greater by Seven hundred seven and 33/100 Dollars ($707.33), than the sum it would have had to pay had defendant complied with its said covenant and agreement. That the average dates of payment of the above sum were as follows: of Four hundred forty and 90/100 Dollars ($440.90) thereof, September 1, 1912; Two hundred fifty-eight and 63/100 Dollars ($258.63) thereof, January 1, 1913; and Seven and 80/100 Dollars ($7.80) thereof, March 15, 1913."

This cause of action was dismissed by the learned trial court upon the ground that the 48th paragraph, just quoted,

stated merely conclusions and that no facts were alleged therein which furnished any basis for a cause of action. The court said that these two paragraphs amounted to no more than merely a statement that the defendant " made a contract, and * * * failed to keep it " and the plaintiff was damaged by such failure. · That such a pleading, setting forth merely inferences or conclusions, but no facts showing a breach of the agreement, is not sufficient, has been repeatedly held. (*Van Schaick* v. *Winne,* 16 Barb. 89; *Petty* v. *Emery,* 96 App. Div. 35; *Cook* v. *Warren,* 88 N. Y. 37; *Knapp* v. *City of Brooklyn,* 97 id. 520; *Coffin* v. *Grand Rapids Hydraulic Co.,* 46 N. Y. St. Repr. 851; affd., 136 N. Y. 655.) Upon the argument as to the sufficiency of this cause of action it appeared that plaintiff was relying upon proof of the fact that defendant had refused to install a sprinkler system in the premises, as ordered by the boards referred to. Defendant claimed surprise and the complaint certainly gave it no intimation whatever as to the nature of the claimed breach by it of the covenant in question. The court thereupon offered plaintiff an opportunity to apply at Special Term to amend the complaint in respect to this cause of action, but plaintiff's counsel replied: " I wouldn't do that for the amount of money involved in that cause of action." Whereupon the court properly dismissed the same, and the dismissal should be affirmed.

The fourteenth cause of action is based on the " fifteenth " paragraph of the lease, which reads as follows:

" *Fifteenth.* The Tenant shall have the privilege of installing at its own expense a high pressure electric power and light generating plant, if it deems it for its interest to do so. The Tenant, however, shall avail itself of this option to install a high pressure power plant within one year from the date hereof, and shall give timely notice accordingly to the Landlord of its intention so to do. Should the Tenant not so notify the Landlord within one year from the date hereof, the option as to the installation of such power plant shall become null and void. The saving in the cost of the equipment for the heating plant at present planned because of there being no requirement for it, is to be allowed and paid to the Tenant by the Landlord. In case the Tenant established

its own plant, the Landlord is to provide sufficient space in the building for the installation of such plant, coal bunkers and necessary accessories, and is to enter into a contract to cover the terms of this lease with the Tenant, or its lessees, for the heating, lighting, running of elevators, and such general care of the building as the Landlord is obligated to assume, and at the same rates as such services can be obtained by the Landlord from other responsible parties for the same service, and under the same terms and conditions provided for in this lease as to the Landlord's obligations to the Tenant. The Landlord is also to make known to the Tenant the minimum monthly requirement of power by the Landlord, and enter into an agreement with the Tenant to continuously use such minimum requirement of power, the Tenant to charge the Landlord for such power at the same rate it would pay in case they entered into a contract with the Edison Company for a joint rate for the Landlord and Tenant, as elsewhere provided for herein."

After substantially setting forth said paragraph, it is alleged that within the year plaintiff notified defendant that it elected to avail itself of the option thereby given to install its own plant and demanded that defendant enter into the agreements and contracts therein specified but that defendant notified plaintiff it would not enter into such contracts and repudiated the same, to that extent. It is then set forth that plaintiff was ready, willing and able to install the plant provided for and to furnish to defendant the power for heating, lighting, running the elevators, and such general care of the building as defendant was obligated to assume, but that by defendant's repudiation of its agreement plaintiff was prevented from so doing; further, upon information and belief, "that, if defendant had kept and performed its said covenants and agreements with plaintiff, plaintiff would have furnished such power to defendant for the period of twenty (20) years, and would have received therefor each year a sum larger by Four thousand Dollars ($4,000) than the expense to plaintiff of furnishing such power to defendant during said year; making an aggregate profit to plaintiff of Eighty thousand Dollars ($80,000). That, on or about August 28, 1913, plaintiff demanded of defendant payment of the present

value, as of said date, of said sum of Eighty thousand Dollars
($80,000), calculated at the rate of five per cent (5%) per
annum, amounting to Forty-nine thousand eight hundred
forty-nine and 04/100 Dollars ($49,849.04); but that defendant
refused to pay the same, and that no part thereof has been
paid." There is a further allegation that relying upon
defendant's agreement as contained in the lease, and before
the latter's refusal to proceed, plaintiff had necessarily expended
the sum of $1,399 in preparing to install the high pressure
electric power and light generating plant, which was the
reasonable value of such preparation. The learned trial court
dismissed this cause of action upon the ground that the
profits which plaintiff could have made had defendant entered
into the contracts proposed by plaintiff were so speculative
and uncertain as to furnish no basis for a recovery, and also
that the contract was unenforcible for various reasons,
principally having to do with its indefiniteness. We agree
with the contention that the damages sought to be recovered
for the alleged breach of this contract were so problematical
and speculative and depended upon so many elements which
the future alone could disclose, that the fixing of any definite
sum as recoverable was quite impossible. The mere fact
that for the first or second year of the contract a profit might
have been made, is no basis for finding that similar (or any)
profits would have been made for the remaining eighteen
years of the term. The factors which would enter into the
computation as to future profits are quite impossible of present
ascertainment. But we believe as well that the complaint
was properly dismissed because of a further consideration,
urged by defendant upon the trial. While plaintiff sued
upon the covenant as contained in the lease itself and made
no effort to obtain relief by way of reformation, it made
various offers of proof and obtained an amendment of its
complaint as to this cause of action, and during the argument
of the motion to dismiss much was said as to what plaintiff
might be able to prove. None of these things in any way
affected the merits of the main controversy nor had any
bearing upon the ultimate decision of the motion. Plaintiff
contended that under the paragraph in question, defendant

was required to enter into two contracts with plaintiff: (1) To provide for the heating, lighting, running of elevators and such general care of the building as the landlord was obligated to assume; (2) to provide for the landlord taking from the tenant the power required by the landlord, or its subtenants, not only for the execution of the first contract, but also for the running of the business of the landlord and of its subtenants in all portions of the building not occupied by plaintiff, in connection with which second contract the landlord was to make known to the tenant the minimum amount of power required by it for all purposes; and it was to agree by said second contract to use such minimum amount of power continuously. The contention of the defendant was, that its sole liability was limited to taking such power from plaintiff as was required to enable defendant to heat and light the building, to run the elevators and to take general care of the premises and that the minimum power to be supplied as specified in the lease was limited to this use. It was conceded upon the trial that the defendant offered the plaintiff the requisite space in which to install its power plant; that defendant had offered to make a contract with plaintiff to use continuously a minimum of 1,400 kilowatt hours per month; that if defendant was correct in its interpretation of the lease, that minimum was sufficient; that plaintiff's refusal to enter into any contract with defendant for power was due to defendant's refusal to take a minimum of more than 1,400 kilowatt hours per month; and that consequently plaintiff had no cause of action under the paragraph of the lease in question if the minimum which defendant offered to take was the correct one. We are of the opinion that the interpretation which defendant placed upon the lease was the correct one, and as it had complied with all its obligations thereunder in this particular, plaintiff had no cause of action under the covenant in question. The dismissal of the fourteenth cause of action was correct and should be affirmed.

Considering next the defendant's appeal, it is urged that the dismissal of its fourth counterclaim was erroneous. This was based upon a portion of the 3d paragraph of the lease, reading as follows:

" And as part of the consideration for this lease, the Tenant

also covenants and agrees to faithfully fulfill and comply
with all reasonable orders, rules and regulations of the New
York Fire Insurance Exchange or the New York Board of
Fire Underwriters not inconsistent with its business as outlined
above, in regard to the use of the premises and in regard to
the storage and handling of benzine and other similar material
in said leased premises, both as to quantity kept on hand at
any one time and as to the method of keeping and storing the
same; also with all laws, rules, regulations and ordinances
of any State, Municipal or Federal authorities in regard to
the use of the demised premises, and to use said premises for
no purpose more hazardous than as above set forth.

" The provisions of this subdivision numbered ' Third '
shall pertain to and be binding upon the Tenant only in
so far as and to such extent only as such rules, orders,
ordinances or regulations, or any of them, shall bear upon
or have relation to or be applied because of the character
or method of the use and occupation of said leased premises,
or any part thereof, by the Tenant or its lessees, and were
not made, issued or enforced by reason of any acts or omissions
of the Landlord or its agents.  Any addition, additional
staircases, fire escapes or changes to the exterior or interior
of the structural parts of the building, which the City or
any other authorities may require, shall be supplied, installed,
made and provided for by the Landlord, at its own cost and
expense."

The counterclaim in question sets forth that on or about
December 1, 1913, the industrial board of the city of New
York demanded of the landlord and tenant that they equip all
of the building Nos. 418 to 426 West Twenty-fifth street with
a fire alarm signal system, and that thereafter defendant
duly demanded of plaintiff that it equip or pay the expense of
equipping the floors and portions of the building occupied
by it as tenant with such fire alarm signal system and pay
one-half of the necessary rental therefor, but that plaintiff
refused so to do, whereby defendant was required to so equip
said building and it seeks to recover one-half of the cost thereof
from plaintiff.  This counterclaim upon the trial was amended
by setting forth that the order in question was occasioned
" wholly because of the character and method of the use

and occupation of said leased premises by the plaintiff herein, but no evidence was introduced in support of that allegation. In fact, the order in question was issued because the building was a factory building. When the lease in question was executed, there was no requirement of law that such a building should be provided with a fire alarm signal system. The lease to plaintiff was expressly for factory purposes and it was contemplated by the paragraph in question that plaintiff might use its part of the premises in such a way as to call· forth special orders or regulations, caused ·by its own act and which, therefore, it was required to comply with at its own expense; or there might be action called for, not necessitated by any act of the tenant, but required either by some changed policy or general plan of regulation by the boards or authorities in question and with the expense of complying therewith the landlord should be chargeable. The landlord erected this building as a factory building; it leased part of it to plaintiff for factory purposes; plaintiff in no way exceeded or violated the stipulated. use. Not till October 1, 1913, did the statute become operative (Laws of 1913, chap. 203, amdg. Labor Law [Consol. Laws, chap. 31; Laws of 1909, chap. 36], § 83a, added by Laws of 1912, chap. 330) requiring that every factory building over two stories in height in which more than twenty-five persons were employed above the ground floor should be equipped with a fire alarm signal system, the same to be installed by the owner or lessee of the building. Thus it was a new policy of the State which required factory buildings to be so constructed. It was the nature of the structure itself and of the business therein conducted which called for the system. Defendant had leased part of its structure to plaintiff for factory purposes and plaintiff had so used it. It was conceded that other tenants were using other parts of the building in question for factory purposes when the order in question was made and that the order would have been issued, even if plaintiff had not been in the building. As between the landlord and tenant, we think that under the provisions of this lease the duty of complying with the order in question was on the landlord, and the dismissal of the fourth counterclaim is, therefore, correct and should be affirmed.

The fifth counterclaim is based on a portion of the 6th paragraph of the lease as follows: " And the Tenant shall not make any structural alterations in the demised premises, or permit them to be used for any purpose deemed extra-hazardous on account of fire or otherwise, without the Landlord's consent thereto in writing first had and obtained, under penalty of damages and forfeiture."

It is alleged that plaintiff has broken the said provision by making structural alterations in the premises, removing and altering portions of the floors, making holes therein, constructing a dumb-waiter shaft, putting in pipes and otherwise interfering with the condition, strength and structural capacity of the floors, all without defendant's permission or consent, in writing or otherwise. It is then averred that defendant has duly notified plaintiff of said breach, and has declared a forfeiture of the lease because of the said acts and has demanded that defendant be permitted to re-enter and repossess all of the portions of the building leased to plaintiff, which has been refused by plaintiff. It is then set forth that plaintiff is in possession of specified portions of the building in question pursuant to the terms of the lease between the parties which is annexed in full to the answer. But that lease contains also the following paragraph:

" *Twentieth.* In case of the intentional and persistent violation of any of the covenants of this lease by either the Landlord or the Tenant, the aggrieved party may elect to declare this Lease expired as if the time fixed for its expiration had actually arrived, anything to the contrary herein contained, notwithstanding; *Provided,* however, that in case there is a dispute between the parties as to such violation, the same shall first be determined by arbitration in the manner provided elsewhere herein for the determination of any and all disputes that may arise; and in case of an ascertained violation by the Tenant, which shall not thereupon as soon as practicable cease, it shall thereupon be lawful for the Landlord to enter said demised premises as at the expiration of the lease and remove all persons and property then being in the same, and again have the right to enjoy the premises. The said Tenant hereby expressly waives the service of any notice in writing of intention to re-enter as provided for in Section

1505 of the Code of Civil Procedure, and the third section of an Act entitled ' An Act to abolish distress for rent and for other purposes,' passed May 13, 1846." *

There is also a general provision for the arbitration of any differences of opinion or disputes, contained in the 26th paragraph of the lease. But the controversy in question comes directly within the scope of the 20th paragraph quoted, and as it was neither alleged nor sought to be proved that the landlord had complied with any of the provisions thereof, the fifth counterclaim was properly dismissed and the dismissal should be affirmed.

The judgment appealed from will be affirmed, without costs.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment affirmed, without costs.

---

* Laws of 1846, chap. 274, § 3.— [REP.