STANLEY TRADING COMPANY, INC., Respondent, v. BENSDORP, INC., Appellant.

Judgment affirmed, with costs.

VAN VOORHIS, J. (dissenting). Judgment for $30,000 damages has gone against defendant-appellant based upon the breach, after the lapse of one year, of a contract under which plaintiff became exclusive sales agent of defendant in a large part of the United States for a term of ten years. The contract recites that defendant, in turn, "has the sole and exclusive importation of all of the products of Bensdorp, N. V. of Bussun, the Netherlands, said products being cocoa, chocolate, candy and all derivatives of the cocoa bean". Otherwise the record indicates nothing concerning the nature, history, permanence or business connections of plaintiff or defendant, or of defendant's supplier in Holland, except that during the first year of the contract in suit plaintiff sold in the United States between $196,000 and $278,000 worth of defendant's products, on which there is evidence that plaintiff's net profit from commissions was $15,744.77. Plaintiff corporation appears to have been the vehicle whereby one Steven S. Godefroi did business. Mr. Godefroi had previously sold Bensdorp candy products for about six months. Between March 12, 1947, when the agreement in suit was made, and its breach on March 30, 1948, plaintiff was also engaged in an export business of other products to Venezuela, the nature of which does not appear. The verdict which plaintiff has recovered reflects the jury's conception of what the future would have held in store for Mr. Godefroi, from plaintiff's discharge on March 30, 1948, until the contract would have expired on March 12, 1957. They were called upon to appraise the value of the unexpired term of plaintiff's contract, which meant, if the amount of the damages were not to be based upon guesswork, that they had to make a reasonably accurate forecast for nine years, both from the viewpoint of business in general and of plaintiff's and defendant's businesses in particular. In appealing from the judgment, defendant-appellant challenges the correctness of an instruction to the jury that the amount of the commissions earned by plaintiff from defendant's business during the first year of the contract "is sufficient basis upon which a jury may determine as to whether or not any damages were sustained or could be sustained", which instruction was duly excepted to, and was given in explanation of and in conjunction with the statement in the main charge, that "The damages consist of claims of probable future commissions, less probable future expenses, and are based on the assumption that the defendant's business in the future will not substantially be lowered in the line of his trade or business", taking into account also what Godefroi would have been likely to earn elsewhere. Appellant's position was brought explicitly to the attention of the court by appellant's counsel on the argument in support of the motion to dismiss the complaint, after both sides had rested, as follows:

" I would also like to call your Honor's attention to the testimony given by the only witness [Godefroi] produced by the plaintiff on the question of damages * * *. The only thing he testified to, if your Honor will recall, was the fact that he worked for Bensdorp. * * * on the problem of damages, here is all he had to say. He said he had certain commissions which were disputed, and he had expenses. There was absolutely no evidence given by the plaintiff as to the probable future condition of his business, as to the past condition of his type of business, nor was any evidence given to indicate what the present condition of the defendant's business is.

" To submit a question like that to the jury would be to permit the jury the grossest degree of speculation on the question of damages, and if your Honor please, I submit the cases are clear that in a case of this type of breach of an executory contract, the jury is not permitted to speculate on the question of damages."

Concluding his argument, appellant's counsel said that all of the testimony given by plaintiff concerning damages consists of three and one-half or four pages, and that " the only facts that are before this Court are his commission earnings in the year in which he worked, and his expenses during that year", to which the court replied: " Isn't that a basis of what the future might bring? Isn't that a basis of a foundation that in the year 1947 and the year 1948, under this contract, taking the figures of your own client, the plaintiff says he earned $24,923.91, and your client says it was $21,848.30. I am taking these figures as a basis of the transaction between the parties."

In its notice of exceptions, defendant stated that it intended to review on appeal exceptions taken in the proceedings on the trial after both sides had rested, and exceptions addressed to the court's charge and the refusal to charge as requested by the defendant. Although this appeal has been perfected on a bill of exceptions, and appellant is not in position to contend that the verdict is contrary to the evidence, the printed record is deemed, under rule 232 of the Rules of Civil Practice, to contain all of the evidence which is necessary to present the questions of law which are to be raised on the appeal. In settling the record, the parties so stipulated and the trial court so determined in the order settling the case. The printed record submitted to the Appellate Division must, therefore, be deemed to contain all of the evidence received at the trial relating to whether the jury were permitted to speculate respecting the damages sustained by plaintiff on account of defendant's anticipatory breach of contract, to which the attention of the Trial Justice was specifically directed, and which is raised by the exception to the charge above mentioned. It is true that the court did charge that the jury " may not speculate or guess " in this matter, but that would not correct an error in submitting to the jury an issue upon which they could not pass without engaging in speculation.

Almost from the beginning, our courts have been confronted with the elusive problem of when to allow or to disallow recovery of damages in various forms for loss of prospective profits. In *Bagley* v. *Smith* (10 N. Y. 489), after serious consideration, an award was upheld which included three months' profits prevented by the premature dissolution of a copartnership. The previous experience of the firm during a year and a half was held to be admissible as a guide to the jury's determination, although they were required to make allowance for the fluctuations of trade, the danger of losses, and the effects of competition during the period after the wrongful dissolution and before the trial. There, as in a majority of the cases, the interval over which loss of prospective profits was to be computed had expired before the trial, and various factors entering

into making the profit claimed by the plaintiff could be examined after they had occurred. The leading case of *Wakeman* v. *Wheeler & Wilson Mfg. Co.* (101 N. Y. 205), cites and discusses the previous authorities, and holds that although such damages may be allowed, they " must not be merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract. They may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed. * * * They may be so uncertain, contingent and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved." (P. 209.) The judgment was reversed and a new trial granted on account of the exclusion of evidence concerning business experiences of the defendant after the breach of contract and before the trial, which would have shed light upon how much of plaintiff's prospective profits had been prevented.

In *Dart* v. *Laimbeer* (107 N. Y. 664) the plaintiff's prospective share in copartnership profits for eight months was allowed to be recovered on account of the dissolution of the firm by the defendant contrary to the agreement. The record contained detailed facts to show the probable course of the business during the unexpired term, such as a businessman would want to know in order to make a reliable estimate concerning the prospects of the firm.

*Mortimer* v. *Bristol* (190 App. Div. 452) comes nearer than any other case that has been cited justifying an affirmance of the judgment herein, but there it was emphasized that all available evidence was produced on which to base a business forecast for the period involved. Damages were allowed for the prospective loss of commissions by reason of the breach of a ten-year general agency contract for the sale of life insurance. The measure of plaintiff's ability to sell defendant's insurance was indicated by the results of his former employment as a subagent for the same company. This court said (p. 462) : " The jury allowed him at the rate of $850 a year for the ten years of his contract. It is evident that the plaintiff presented to the jury the very best evidence obtainable showing the amount of damages which he had sustained, and he should not be deprived of all damages under the authorities before mentioned because of his inability to establish by evidence some particular amount as the damages which he had suffered."

Although the latter principle has been pronounced repeatedly, the application of this rule is subject to the qualification that the damages shall be ascertained by the " best evidence obtainable " (*Mortimer* v. *Bristol, supra,* p. 462), by " probable estimates " (*Wakeman* v. *Wheeler & Wilson Mfg. Co., supra,* p. 209) and upon " the relevant facts antecedent and subsequent to the breach " on " such reasonable certainty as serves as a basis for the ordinary conduct of human affairs " (*Stevens* v. *Amsinck,* 149 App. Div. 220, 229, 230). In other words, such evidence is required as would enable a businessman to make a prediction with reasonable accuracy. Thus, in *Cramer* v. *Grand Rapids Show Case Co.* (223 N. Y. 63) it was held that damages were too speculative to be recovered for profits lost in consequence of defendant's breach of contract, in failing to deliver furniture and fixtures in order that plaintiffs might open a new store in proper season to sell for the fall and winter trade. " While evidence of such facts may be admissible they must not be uncertain or problematical. (*Dickinson* v. *Hart,* 142 N. Y. 183.) " (P. 68.)

In *Broadway Photoplay Co.* v. *World Film Corp.* (225 N. Y. 104) it was held that damages could not be recovered for breach of a contract for the first run of a feature motion picture. In spite of testimony that box-office receipts

for first-run pictures depend upon the reputation and sales promotion efforts of the producer, rather than upon the content of the scenario, the court said, per Cardozo, J. (p. 107): "No one can compute in advance the earnings of unknown plays (*Bernstein* v. *Meech,* 130 N. Y. 354)." In the opinion in that case, consideration was given in detail to the complex factors affecting prospective profits, indicating that the essentials of a business survey should be considered. Language from that case was quoted in plaintiff's brief, and in the opinion of the trial court herein on the motion for a new trial, that "The plaintiff was not required to prove its damages to the dollar". But Judge Cardozo added (p. 109) that Broadway Photoplay Company was "required, however, to supply some basis of computation (*Bernstein* v. *Meech, supra; Todd* v. *Keene,* 167 Mass. 157; *Cramer* v. *Grand Rapids Show Case Co.,* 223 N. Y. 63); and this it did not do." These cases were recently cited and followed by this court in *Dunkel* v. *McDonald* (272 App. Div. 267, 271) holding that a decrease of $32,500 in a plaintiff's business for one year did not of itself establish that this reduction in income was due to defendant's wrongful conduct.

Other cases indicate that evidence of damage in such situations, particularly where the contract has many years to run, may not be perfunctory, nor presented on the theory that accuracy in amount of the recovery is unimportant and can be dispensed with, especially where supplementary evidence is available (*Wooldridge* v. *Shea,* 186 App. Div. 705; *Walter Janvier, Inc.,* v. *Baker,* 229 App. Div. 679; *Cutting* v. *Miner,* 30 App. Div. 457, 460; *Strauss* v. *Hoch,* 162 App. Div. 569; *Blanchard Co.* v. *Rome Metallic Bedstead Co.,* 184 App. Div. 187, 193; *Palmer* v. *New York Herald Co.,* 228 App. Div. 176, affd. 255 N. Y. 572, appeal dismissed in part 254 N. Y. 563; *Streat* v. *Wolf,* 135 App. Div. 81; *Bean* v. *Carleton,* 58 Hun 611, opinion in 12 N. Y. S. 519, affd. 126 N. Y. 642; see 1 Clark on New York Law of Damages, §§ 79–84). It has even been held that a discount should be taken for interest, since the judgment is payable before the net profits would have been earned or paid (*Goodsell* v. *Western Union Tel. Co.,* 21 Jones & Sp. 46, 51, revd. on other grounds, 109 N. Y. 147).

In *Blanchard Co.* v. *Rome Metallic Bedstead Co.* (*supra*) this court affirmed a judgment for defendant, stating (p. 193): "We agree with the contention that the damages sought to be recovered for the alleged breach of this contract were so problematical and speculative and depended upon so many elements which the future alone could disclose, that the fixing of any definite sum as recoverable was quite impossible. The mere fact that for the first or second year of the contract a profit might have been made, is no basis for finding that similar (or any) profits would have been made for the remaining eighteen years of the term. The factors which would enter into the computation as to future profits are quite impossible of present ascertainment."

In *Wooldridge* v. *Shea* (*supra*) in reversing a judgment for plaintiff and granting a new trial, this court also said (p. 709): "The principal difficulty with the evidence in this case is that it does not show or tend to show, with any degree of certainty, *that the enterprise would have been profitable* or that there would have been profits in which the plaintiff would have been entitled to share." (Italics from original.)

In *Orester* v. *Dayton Rubber Mfg. Co.* (228 N. Y. 134, 139) it was said: "A party injured by a broken contract must prove the damages he receives as well as the other elements necessary to permit a recovery."

It is apparent that, upon the trial of the present action, plaintiff preferred to rely upon the principle of law that a party violating his contract should

not be permitted to escape liability because the amount of the damages which he has produced is uncertain, rather than to introduce evidence which is available and would ordinarily be required in forecasting what is likely to occur during the unexpired portion of the term of plaintiff's contract. Plaintiff's net earnings from operating under this contract for the year from March 12, 1947, to March 30, 1948, were relevant (*Bagley* v. *Smith,* 10 N. Y. 489, *supra*), but fail to tell the whole story. They should have been supplemented by evidence concerning the character and trends of the industry, defendant's competitive position therein, and other facts or factors bearing upon its past record and future prospects, and upon plaintiff's also. These are matters which anyone would want to know before entering into a contract for a ten-year term, and the jury were entitled to the same kind of information.

The only evidence concerning the confectionery sales and distribution business was introduced by defendant, in the form of a survey by the United States Department of Commerce, indicating that the year from March, 1947 to March, 1948, was an especially good year, and that facts existed from which one might infer that thereafter competition would increase and sales become more difficult, especially those of importers. Although nearly two years had passed between the date of plaintiff's discharge and the date of the trial, no evidence was introduced showing how defendant's sales in the same territory had held up during that period, nor of plaintiff's own earnings or activities. In *Walter Janvier, Inc.* v. *Baker* (229 App. Div. 679, 681, *supra*) this court noted an objection taken to the probative force as proof of damage of a statement of net profits for ten months before breach of a five-year contract, stating: " This objection was based upon the ground that the plaintiff had failed to show that conditions continued the same after the contract was terminated. In our view the exception was well taken."

Apart from uncertainty that plaintiff's gross commissions from defendant's business would have remained stationary during the remaining nine years of the contract, is the greater uncertainty that plaintiff's business expenses would have remained the same. In arriving at the $15,744.77 net profit which plaintiff claimed to have earned during one year from defendant's business, and which was used as the sole basis of estimating future net profits from commissions from defendant, Godefroi allocated 42% of the overhead expense of maintaining his office to another business conducted by him from the same location, which was described merely as " Export business to Venezuela." These two businesses were so interrelated that Godefroi testified that " One couldn't exist without the other." He testified that he had to terminate the Venezuelan business after defendant cancelled his contract, due to the increased overhead resulting from the operation of either of said businesses separately. If the Venezuelan business were to have ended first, it would have increased largely Godefroi's overhead expense attributable to his duties under defendant's contract. Clearly, therefore, unless the Venezuelan export business were to have remained stable during the unexpired portion of the term of this contract, fluctuations would substantially have altered the net profits which plaintiff would have derived from handling defendant's products, or would have extinguished such profits altogether. The uncertainty regarding the Venezuelan venture is the greater since it is not disclosed what kind of goods plaintiff exported there, let alone any other factors bearing upon the likelihood that it would continue with any degree of stability as a going concern for nine years.

There is no occassion at this time to try to formulate the proofs which should be offered at another trial. It suffices to say that plaintiff has the burden of

making a more serious effort to establish as many relevant facts as are available, in order to arrive with reasonable accuracy at an estimate of a loss of profit from commissions which, even at best, can only be approximate. The difficulty in arriving at an exact amount calls for greater rather than less effort in aiming at accuracy. In *Griffin* v. *Colver* (16 N. Y. 489, 492) the old rule of damage was considered in actions for illegal capture of cargoes at sea, that anticipated profits from sale at destination cannot be recovered, since " the fluctuation of the markets and the contingencies affecting the length of the voyage render every calculation of profits speculative and unsafe." Difficulty in obtaining information about foreign markets, owing to primitive methods of communication, is mentioned in a quotation from Mr. Justice STORY. These obstacles have been removed by the disappearance of sailing vessels, and the advent of rapid communication by cable and wireless. But it is at least as hard today to know what will be the market demand and competitive conditions of tomorrow, as it was a century ago to learn in New York what the markets were upon the same day in London or Liverpool, and it was easier then to predict the arrival of a sailing ship than it is now to know whether plaintiff's or defendant's businesses will make port by 1957. Facts may exist on which such a prediction can be based, but there are not enough of them in the present record.

The judgment appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

Glennon, Shientag and Heffernan, JJ., concur in decision; Van Voorhis, J., dissents and votes to reverse and grant a new trial, in an opinion in which Peck, P. J., concurs.

Judgment affirmed, with costs. No opinion.