NATIONAL CONCERT AND ARTISTS CORP., Respondent, *v.* JOHN C. MURRAY, Appellant.

First Department, February 3, 1953.

*Murray Bein* of counsel (*Richard C. Murphy,* attorney), for appellant.

*Edward H. McAloon* and *William T. Mulcahy* of counsel (*McAloon & Hirschberg,* attorneys), for respondent.

VAN VOORHIS, J. National Concert and Artists Corp. (hereafter called National), plaintiff above named, sued defendant John Creighton Murray on an account stated. Thereafter Murray sued National on two other causes of action. Both actions were consolidated. At the trial, Murray's first cause of action was dismissed upon the law, National was defeated upon its claim to an account stated, and Murray recovered upon his second cause of action his share of the box-office receipts from his concert performances that occurred while he was under the management of National. Murray appeals from the portion of the judgment which dismisses his first cause of action, which is all that is involved upon this appeal.

The action arises from a management contract dated October 10, 1947, between National and plaintiff, who is a violinist. This agreement provided that for a term of eighteen months commencing January 1, 1949, National would act as the exclusive manager of Murray throughout the world except Europe, it apportioned between them the gross receipts from his concerts, determined how the expenses should be paid, and prohibited Murray from making any concert engagements without first consulting National. He was told, according to the testimony of National's manager, to cultivate his personal contacts, but was warned that " * * * every pending or prospective engagement must be cleared through this office, to avoid any conflicts. Somebody you contact might want to book you some place, meanwhile we have already booked you — there is a conflict, something will be created which will be against your own best interests and our policies ".

The controversy involved in Murray's first cause of action had its origin in connection with certain engagements which Murray made upon his own initiative in Wisconsin. He promised to play at four performances for an organization known as the " Diocese and Council of Catholic Women in Wisconsin ".

The testimony is in conflict whether National sanctioned these engagements. Murray testified that in the spring of 1949 he spoke to National's manager concerning them, and testified that the manager replied '' yes, there was not much on the books and that he was delighted that I could get these engagements, $1600 worth of engagements there in Wisconsin. I said, well, then, I will go ahead and contact the people to let them know that it is all right with me and with my managers and to put the thing through, the booking.'' Plaintiff then promised to play at these concerts. Later, National contracted for a performance in Eau Claire, Wisconsin, under different auspices, which conflicted with Murray's sponsorship by the D. C. C. W., as the Catholic women's organization was known. This is plaintiff's version.

The manager of National denied that Murray ever spoke in advance about his engagements with D. C. C. W., and testified that when he learned what was happening he told Murray that he must cancel those engagements. After Murray had refused to do so, National, on June 1, 1949, notified its field staff, consisting of twenty-three agents throughout the United States, that Murray was no longer available for concerts through the management of National. According to the manager, he told Murray in May that National would have to insist upon its contract rights. In fact, he wrote to Murray on May 4, 1949, to this effect. After June 1, 1949, National ceased booking concerts for Murray.

The issue presented at the trial concerning liability of National on Murray's first cause of action revolved, therefore, upon whether Murray made his Wisconsin engagements for these concerts with or without the previous consent and approval of National. Although this cause of action has been briefed as though it were laid in tort, it is essentially contractual in nature. The allegation in the complaint is that National '' in violation of its duty and trust and in breach of its said contract of management '' ceased booking concerts for Murray.

The first cause of action appears to have been dismissed at the trial upon the ground that evidence of damage was lacking rather than that Murray had failed to prove a prima facie case of breach of contract. In holding that the evidence of damage was speculative, we consider that the trial court erred. National was widely organized in the concert branch of the entertainment field. The withdrawal of its support during the thirteen months of the unexpired term of Murray's contract, from June 1, 1949 through June 30, 1950, must have had a marked effect upon the

amount of his earnings. The evidence indicates that the gross receipts paid to National for Murray's concerts during the term of the agreement from January 1, 1949 until the cancellation thereof on June 1, 1949, while he was under National's management, were $9,550. This amount was, of course, subject to payment of National's share under the contract, and also subject to necessary expenses to be borne by Murray, but, coupled with the other evidence, including Murray's receipts of $2,350 from June 1, 1949 through June 30, 1950 (the expiration date of the contract), it furnished some basis for a computation of damages by the jury, if they found that National broke the contract. There is a sharp question of fact, as has been stated, concerning whether Murray or National broke this contract, but that question cannot be resolved upon this appeal.

It has been held that first performances of motion pictures or plays are too uncertain to form a basis for an award of damages, where such performances have been prevented by breach of contract (*Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 104; cf. *Dunkel* v. *McDonald,* 272 App. Div. 267). But here there was evidence of many previous performances by Murray, as a concert violinist, under National's management, the box-office receipts from which in different cities could aid in ascertaining the amount of the loss. Where, under such circumstances, all of the evidence reasonably obtainable has been introduced, a plaintiff is not to be defeated for the reason that his damages cannot be measured exactly, if it is certain that damage has occurred in an amount which can be determined within reasonable limits (*Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205; *Dart* v. *Laimbeer,* 107 N. Y. 664; *Mortimer* v. *Bristol,* 190 App. Div. 452, and other cases cited in dissenting opinion in *Stanley Trading Co.* v. *Bensdorp, Inc.,* 278 App. Div. 641).

The judgment appealed from should be reversed insofar as it dismisses appellant's first cause of action, with costs to appellant to abide the event, and a new trial upon that cause of action should be granted.

Peck, P. J., Callahan and Breitel, JJ., concur.

Judgment, insofar as it dismisses appellant's first cause of action, unanimously reversed and a new trial upon that cause of action granted, with costs to the appellant to abide the event. Settle order on notice.