Mining Co., 99 N. Y. 368, 2 N. E. 24; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407; O'Donnell v. Gas Co., 91 Hun, 184, 36 N. Y. Supp. 288. The case of Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901, relied upon by counsel, involves quite a different question from the one we are now discussing. Upon the trial it was conceded that the defendant had omitted to provide her elevator with an automatic attachment in compliance with the provisions of section 8 of chapter 462 of the Laws of 1887, which requires that:

"It shall be the duty of the owner," etc., "of any manufacturing establishment where hoisting shafts or well holes are used to cause the same," etc. "It shall also be the duty of the owner," etc., "to provide * * * such proper trap or automatic doors, so fastened in or at all elevator ways as to form a substantial surface when closed, and so constructed as to open and close by action of the elevator in its passage, either ascending or descending."

In submitting the case to the jury the learned trial justice alluded to this omission, but stated in language that was not capable of misapprehension that it had nothing whatever to do with the plaintiff's right to recover, unless it directly contributed to the accident of which she complains. At the conclusion of the charge the court was asked to instruct the jury that the absence of the automatic attachment did not contribute to the plaintiff's injury; and, further, that its absence, in the circumstances of this case, had nothing to do with such injury. These requests were both declined, and the defendant's counsel duly excepted. We think neither of these exceptions presents error. It is true that upon the occasion when the plaintiff received her injury the door to the elevator had been opened by one Brown, who was in the defendant's employ; and that while it remained open the elevator car was at the top of the building. But it appears by the evidence of the witness Guetig, who was called as an expert, that if the proper attachment had been provided the door would have closed automatically, even under these circumstances, unless Brown had held it open, and it is by no means clear that he did so. It is difficult to see, therefore, upon what theory this element of negligence could have been properly withheld from the jury. McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153; Freeman v. Paper-Mill Co. (Sup.) 15 N. Y. Supp. 657. The case, it seems to us, was carefully tried, and the various questions presented by the evidence were all submitted to the jury in such a manner as to deprive the defendant of any right to complain. We therefore think the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.

---

(20 App. Div. 188.)

STOWELL v. GREENWICH INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

1. WRITTEN CONTRACTS—PAROL AGREEMENTS—MERGER.

Under a written contract, plaintiff was made a general agent of defendant fire insurance company, with the power of appointing subagents under his control, who should represent defendant. The contract provided that it might be terminated by either party giving 90 days' notice to the

other, and at the time of its execution, and as a part of the consideration to plaintiff for signing it, it was verbally agreed that, if defendant terminated the contract, it would not retain in its service the subagents appointed by plaintiff, nor make renewals of insurance negotiated by them. *Held*, that the verbal contract was not merged into the writing, but was collateral and suppletory thereto, and hence it was a valid contract.

2. CONTRACTS—BREACH—SPECULATIVE DAMAGES.

A discharged general agent of a fire insurance company may recover for the breach of a contract not to keep in service the subagents he had appointed, and not to make renewals of insurance negotiated by them, though the jury may need to speculate somewhat as to the amount of damages.

Green, J., dissenting.

Appeal from trial term, Monroe county.

Action by Calvin L. Stowell against the Greenwich Insurance Company of the City of New York. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

John Notman, for appellant.

William F. Coggswell, for respondent.

ADAMS, J. The plaintiff, through the medium of this action, seeks to recover damages for an alleged breach of contract. It is conceded that on or about the 31st of December, 1887, the parties entered into a written agreement, by the terms of which the plaintiff was appointed the general agent of the defendant for certain specified portions of the states of New York and Pennsylvania, with power to appoint subagents in the territory assigned to him, subject, however, to the approval of the defendant. The subagents thus appointed were to represent the defendant, and prosecute the business of fire insurance in its behalf in the several localities where they resided. They were, however, to be under the immediate supervision of the plaintiff, who became personally responsible for the faithful performance of the duties required of them, and who also assumed the entire expense incurred in their appointment, as well as in the inspection of all risks and in other special work required in the prosecution of the business. It is not denied that this written contract was fully performed by both parties, and it appears to have been terminated on the 1st day of August, 1895, without fault on the part of the defendant, and solely in virtue of a provision contained therein which accorded to either party the privilege of terminating the contract upon giving to the other 90 days' notice in writing of an intention so to do. It is contended, however, by the plaintiff, that, contemporaneously with the execution of this written contract, an independent and suppletory oral agreement was entered into between him and the defendant, and it is the damages arising from an alleged breach of this agreement that the plaintiff is seeking to recover. It appears that at one time the plaintiff represented the Clinton Insurance Company, under a contract quite similar in its terms to the written one subsequently entered into between him and the defendant; and it is claimed by the plaintiff

that, when the Clinton Insurance Company terminated its contract, it reinsured its risks, and then attempted to turn over his agents to the reinsuring company, without regard to his interests, in consequence of which he suffered serious loss and injury. Shortly after encountering this experience, the plaintiff, through the instrumentality of a gentleman by the name of Foote, obtained an introduction to one Mason A. Stone, who was at that time the secretary, and subsequently the president, of the defendant; and thereupon negotiations were entered into with a view of obtaining for the plaintiff an appointment as the general agent of the defendant. Several interviews took place between these parties, in the course of which, as the plaintiff testifies, he informed Col. Stone of the treatment he had received from the Clinton Insurance Company, and in that connection stated to him that, if he entered into a similar relation with the defendant, he wished it understood that, in the event of the agreement being terminated without fault upon his part, the company should not interfere with his agents or business, to which Col. Stone replied: "If we make arrangements, and the business proves profitable and satisfactory, we shall not want to make any change; and, if it is not profitable, we shall not want the business nor the manager either." But, without entering further into the details of these negotiations, it is sufficient to say that they resulted in the execution of the written contract to which reference has been made, and also, as it is claimed, in the separate oral agreement which lies at the foundation of this action.

It is insisted, however,—and this is the first question which we are asked to consider upon this review,—that the evidence relied upon by the plaintiff is insufficient to establish this latter agreement. This contention, we have no hesitation in saying, does not impress us favorably; for, in addition to the evidence to which we have just alluded, the plaintiff testified that, during the first interview with Col. Stone, he left his contract with the Jersey City Company with him to be copied, and made the basis of the contract to be entered into between the defendant and the plaintiff, stating to him, however, in that connection, that he was "willing to sign a contract of that kind on condition that, if it was terminated, the agency and the renewals should be left with him; and he [Stone] said it was satisfactory to him; and he [Stowell] said it was satisfactory to him." It seems quite evident, therefore, that, if this evidence is to be believed, the minds of the parties met in a contract the terms of which were substantially those set out in the complaint; and, although the evidence of the plaintiff and of his corroborating witness was flatly contradicted by Col. Stone, the issue of fact which was thus clearly defined was submitted to the jury by the learned trial justice, and it can hardly be said now that their verdict, which was in favor of the plaintiff, was against the weight of evidence. Furthermore, it was made to appear most conclusively that, when the written contract was terminated by the defendant, it endeavored to retain in its service all the subagents which the plaintiff had appointed, and to avail itself of all the business which they had obtained, and consequently it must be conceded, we think,·

that, if the oral contract was proven, its breach was likewise established beyond all controversy. And, with these facts thus established, we are brought to the consideration of the real question in the case, and one which is of sufficient importance to deserve careful and serious examination. We refer, of course, to the validity of the oral agreement set up in the complaint, and to the right of the plaintiff, in the circumstances of this case, to make its breach the basis of a recovery.

This question was raised during the progress of the trial in a variety of ways: First, by objection to the admission of evidence tending to prove the parol agreement; then by motion for a non-suit when the plaintiff rested his case; and again by a motion for the direction of a verdict at the close of the proofs. And it is almost superfluous to add that its determination requires a review of the rule which excludes parol evidence when the only effect of its admission will be to contradict, conflict with, or vary the terms of a written agreement. This rule is one of long standing. Generally speaking, there is nothing vague or ambiguous about it, and so thoroughly has it been incorporated into the jurisprudence of this state that we are admonished by the court of last resort that it is no longer "a proper subject of discussion." Englehorn v. Reitlinger, 122 N. Y. 76, 25 N. E. 297. But, simple and well settled as is this rule, its application is not infrequently attended with some difficulty, in consequence of the many exceptions to its full operation which the proper administration of justice seems to require; and it is only by the aid of the exception which excludes collateral undertakings from the operation of the general rule just stated, if at all, that the plaintiff is able to prove and maintain his cause of action.

If we correctly apprehend the plaintiff's attitude, he does not seek by the terms of an oral agreement to vary or modify in any manner the written contract entered into with the defendant; neither does he claim that the written contract is so vague or incomplete as to require explanation; but he does insist that, contemporaneously with the execution of the written contract, he and the defendant made another agreement, which, although not reduced to writing, was collateral and suppletory to the first; that there was an adequate consideration therefor; and that, consequently, he is entitled to recover any and all damages which he has sustained by reason of its breach by the defendant. The importance of determining the soundness of the plaintiff's position in respect of this question is thus made apparent at a glance; for, if this parol contract may be regarded as collateral and suppletory to the written one, he is doubtless correct in his conclusion. Lewis v. Seabury, 74 N. Y. 409; Chapin v. Dobson, 78 N. Y. 74; Eighmie v. Taylor, 98 N. Y. 288; Dodge v. Zimmer, 110 N. Y. 43, 17 N. E. 399; Hutzler v. Richter, 13 App. Div. 592, 43 N. Y. Supp. 679. A brief analysis of the case as it is disclosed to us by the record may therefore prove the best solvent of the problem with which we are here confronted.

Upon the theory that the verdict of the jury represents the actual facts of the case, it may be assumed that an agreement was en-

tered into by these parties, in terms substantially as stated by the plaintiff. It is equally certain that this agreement was supported by a sufficient consideration; for the plaintiff testifies that he signed the written contract upon condition that the defendant would agree, in the event of its termination, not to interfere with his subagents. It related to the same subject as the written contract, it is true; but its provisions are not so closely connected with the principal transaction as necessarily to form a part of it, while without it the written contract is complete and entire. If, then, there is nothing in the oral agreement which conflicts with the written contract, it would seem clear that all the elements necessary to a valid collateral undertaking have been established. In this connection, it is proper to advert briefly to the tenth article of the written contract, which, so far as it bears any relation to the one we are now considering, reads as follows, viz.:

"And it is hereby further understood and agreed by and between the parties hereto that this contract may be terminated at any time by either party giving ninety (90) days' notice thereof in writing, and without any liability . on the part of the said the Greenwich Insurance Company beyond the commission aforesaid, actually earned at the closing of said agency.'

And it is argued that the oral agreement necessarily extends the defendant's liability beyond that contemplated by the provision just quoted, and that consequently it must be in conflict therewith. So far from this being the case, however, we are of the opinion that article 10, when considered in connection with the oral agreement, furnishes satisfactory evidence of the fact that the two contracts, instead of conflicting with, are really independent of, each other; for it is to be observed that either party, upon giving 90 days' notice to the other, was at liberty to terminate the written contract at any time. This could have been done arbitrarily, and, as provided in article 10, without incurring any liability; and, if the defendant had been content to confine itself to the exercise of this privilege, no complaint could or probably would have been made by the plaintiff. But the difficulty is that the defendant did more than merely terminate the contract. It undertook to control the agents which the plaintiff had appointed, and thereby to secure to itself pecuniary advantage. As to whether it might do this without incurring any liability the original contract is silent; and right here is made to appear the distinctive feature of the parol agreement, which was designed to furnish the plaintiff protection against and redress for any such interference. This, it seems to us, is sufficient of itself to sustain the plaintiff's claim that the parol contract is collateral to and independent of the written one; and, if so, it was not only proper to prove it by parol, but, when thus proven, the plaintiff was just as much entitled to recover for any breach of its terms as he would have been had it been reduced to writing. Thomas v. Scutt, 127 N. Y. 133–140, 27 N. E. 961.

The only remaining question to which our attention has been directed relates to the subject of damages. From the very nature of things, it was difficult, if not impossible, to determine precisely what should be the measure of damages in such a case as this.

Here was a contract proven. There was no question as to its breach; neither was there any doubt that the plaintiff had sustained considerable pecuniary injury in consequence thereof. In these circumstances, the learned trial justice, after calling attention to the subject-matter of the contract, its conditions, and the consequences which resulted from its breach, permitted the jury to say what was its actual value to the party injured. This, it seems to us, was a reasonable and proper rule to adopt. It enabled the jury to speculate somewhat as to the amount of damages to which the plaintiff was entitled, but it appears to be now well settled that a party shall not be permitted to escape all liability for violating a contract simply because his liability cannot be accurately determined in dollars and cents. Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264. Our conclusion of the whole matter is that the action can be maintained; that it was tried upon the correct theory; that the record discloses no reversible error; and, consequently, that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur, except GREEN, J., dissenting.