HERMON J. DONAVIN, Respondent, *v.* THOMAS THURSTON, Appellant.

Third Department, December 29, 1919.

Contract — agreement to build boat for per diem wage, funds to be advanced by owner — destruction of boat by fire — when loss falls upon person for whom boat was being built — insurance — insurable interest of person constructing boat.

A written contract made on behalf of the plaintiff with the defendant whereby the latter agreed to superintend the building of a boat for a compensation of $5 per day, the boat to be completed by a certain date, with a further

provision that $1,000 was to be placed to the defendant's order in a bank and that he should be supplied with cash as the work progressed until the boat was completed, did not make the boat the property of the defendant during the period of construction, but on the contrary it was the property of the plaintiff for whom it was being built, and, when the boat before completion was destroyed by a fire for which the defendant was in no way responsible, the plaintiff cannot recover the sums advanced for construction upon the theory that the defendant had agreed to furnish him with a completed boat.

The aforesaid construction of the contract will be given although the defendant protected himself by insuring the work and the material ordered by him on his own credit for which the plaintiff had not yet paid, for the defendant had an insurable interest and, there being no agreement that the defendant should insure for the benefit of the plaintiff, it was the duty of the latter to have protected himself by insurance.

APPEAL by the defendant, Thomas Thurston, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 25th day of March, 1919, upon the report of a referee.

*Wiltse & De Young* [*Clarence L. Crabb* of counsel], for the appellant.

*John C. Crapser,* for the respondent.

WOODWARD, J.:

This is an appeal by defendant from a judgment entered upon a decision of a referee, in favor of plaintiff, for $3,544.14 damages and $515.93 costs. There is no dispute regarding the main facts.

On February 17, 1916, the defendant and one Robert Nicolson made a written agreement as follows:

" ALEXANDRIA BAY, *Feb.* 17, 1916.

" I, Thomas Thurston, do agree to superintend the building of a ferry boat for Mr. R. Nicolson of Morristown, N. Y. I am to receive $5.00 per day for said services. I am to keep steady to work and complete her at as near the time said party wants her done at or near the 1st of May. $1,000.00 to my order in bank and as work progresses I am to be supplied with cash until boat is completed.

" (Signed)   THOMAS THURSTON,
" ROBERT NICOLSON."

It was decided at the time of signing this agreement that the cost would not exceed $7,000. Work was commenced February eighteenth, and on February nineteenth the first $1,000 was furnished. Work proceeded, and March twentieth the second $1,000 was furnished, and on April seventeenth the third $1,000. On May twelfth, without fault of the defendant, the boat and material on the ground were destroyed by fire. The boat was between seventy-five per cent and ninety per cent completed and had cost $7,321. On March twenty-fourth the defendant took out insurance on the boat and material on the premises for $2,000, and on May third for an additional $2,000 — the first for a period of two months and the second for one month — the insured in both instances being "Thomas Thurston, Contractor." Defendant collected the insurance, which did not reimburse him for work and material put into the work after applying the funds paid by the plaintiff.

The referee has awarded judgment against the defendant for the $3,000 paid in by the plaintiff, with interest, on the theory that the title to the boat was in the defendant when destroyed, and that " defendant failed to perform his contract by neglecting to construct and complete said boat and that plaintiff ought to recover the amount advanced by him to defendant, with interest."

The referee finds that there was no agreement to insure for the plaintiff's benefit, and it is obvious that the defendant had an insurable interest in the boat and material to the extent of the insurance taken out by him.

The main question involves the effect to be given to the written contract. If it contains an agreement in words conveying a definite meaning, without contradiction or ambiguity, it must be regarded as expressing the intention of the parties making it. If it does not, then such interpretation must be given from the contents of the instrument itself and all available facts and circumstances, and the fair inferences to be drawn from them.

For reasons not given, the plaintiff, a lawyer of eighteen years' practice, desired not to disclose the fact that this contract was made for him, and procured Nicolson to make it. The defendant is a boatbuilder, not versed in the technical wording of contracts. He wrote this contract and he and Nicolson

signed it, and it contains the essential elements to constitute an agreement. Nicolson accepted it, and it is fair to assume that he reported to his principal, the plaintiff. No criticism of it appears to have been offered at any time, and it is fair to conclude that it was acceptable to the plaintiff from the viewpoint of a skilled lawyer.

It is contended by the plaintiff that it means something different from the words used. The essential features are, " I, Thomas Thurston, do agree to superintend the building of ferry boat for Mr. R. Nicolson * * *. I am to receive $5.00 per day for said services. * * * $1,000.00 to my order in bank and as work progresses I am to be supplied with cash until boat is completed." The details of construction, dimensions, material, etc., were obviously to be supplied. The material and labor would be procured with the money " to my order in bank," as required, and it seems clear that the intention was that the supply of cash was to precede the requirements as the work progressed.

But the plaintiff claims that the contract means in effect that defendant was agreeing to build and complete the boat and that the payments were installments paid toward the purchase price of a complete boat. It seems to me that this is not warranted either by the language employed or in the light of all the evidence presented. To superintend, at a per diem wage, does not import ownership in the structure superintended. On the contrary, it denotes ownership in the one engaging the superintendence. If the plaintiff had intended to contract for the building and delivery of a complete boat at a price, he would have required an entirely different contract, and the defendant would probably have wanted to know something of the responsibility of the party seeking his services. They were strangers to each other. But when the arrangement is considered in the light of the language used, money to defendant's order in the bank before any work is done or responsibility incurred, and cash to be supplied from time to time as the work progressed, it seems to me clear that the defendant assumed no responsibility beyond superintending the work, and there was no necessity under the terms of the contract for him to ascertain or discuss the financial ability of Nicolson.

If the intention was to undertake to build and complete the boat at a given price, there would be no agreement for a per diem wage, there would be no call for a weekly report of materials furnished and men employed, with itemized cost; these particulars would have been of no concern to the plaintiff. But, as superintendent, the defendant presented to the owner from time to time an accounting for the expenditure of the money furnished. The plaintiff testifies unequivocally that he regarded the boat as his, as it progressed.

The clear intent was that plaintiff should first deposit $1,000 before anything was done, and to keep defendant supplied with cash in advance as the work progressed. Relying upon this promise the defendant ordered the material. It is fair to assume that it was largely not stock material, but had to be gotten out specially for this work. The statements rendered show amounts of material *used*, not ordered, or in the yard, or on the way. On March thirteenth the defendant writes for money and says: " I expect two cars of oak and pine in." According to the prices given in the statements, these two cars of oak and pine would cost in the neighborhood of $2,000. Defendant would necessarily have ordered material, depending on the plaintiff's keeping him supplied with cash, and would apply the money received from the plaintiff as fast as he received it, upon the material and labor furnished. It is significant that the insurance of the first $2,000 was taken out March twenty-fourth, which would appear to cover material on the ground or on the way, which was not paid for, including the two cars of oak and pine above referred to.

By the terms of the contract, a period of about ten weeks was provided for the work, and assuming that defendant worked upon it every working day he would have received but $300, only fair day's wages, to say nothing of the occupation of his shipyard and equipment. On what theory can it be said that he assumed any responsibility beyond his day's work? The plaintiff could have protected himself if he had seen fit. He knew that the defendant was not bound to insure for plaintiff's benefit, and if he had taken the trouble to inquire he could have known that the defendant was securing himself — insurance on the material bought with his own credit, to be

sure, but for the plaintiff, and which should have been paid for in advance by the plaintiff.

Let us suppose that the plaintiff had lived up to his agreement and had actually furnished the money as needed, there would have been no occasion for the defendant to insure, and if the plaintiff neglected to provide protection for himself by insurance and the property was destroyed by fire through no fault of the defendant, the loss to the plaintiff would have been the result of his own negligence. The situation is no different in the case as found, where the plaintiff has paid part and the defendant has protected himself by insurance upon work and material which he had put into the property because of the neglect of the plaintiff to do so. Certainly the defendant should not be penalized because of his willingness to proceed under his own credit to supply the necessary work and material.

The only fair interpretation of the contract, if interpretation is necessary, is that the boat was the property of the plaintiff, being constructed by defendant with material purchased by defendant for the plaintiff for that purpose; that if funds had been furnished as agreed, there would have been no occasion or responsibility upon the defendant to insure; and that the destruction of the property through no fault of the defendant would afford no basis for a claim by the plaintiff for damages against the defendant.

If the boat had been the property of the defendant he probably would have insured it for its full value, and his insuring it only for an amount to cover his own advances toward it, due to the failure of the plaintiff to keep him supplied with funds, goes far to demonstrate the defendant's contention.

The defendant had performed his part of the contract up to the time of the fire, and was prevented from further performance by the destruction of the boat through no fault on his part. This put an end to his obligation.

Other facts and circumstances in evidence might be referred to, but they all indicate clearly that defendant undertook simply to superintend the work, which included the selection and purchase of material with the funds furnished by the plaintiff, and it follows that the material on hand for the

purpose, and in the structure as it advanced, was the property of the plaintiff.

The judgment should be reversed and complaint dismissed, with costs.

All concur.

Judgment reversed, with costs, and complaint dismissed, with costs.