MORTON L. MORTIMER, Appellant, v. JOHN I. D. BRISTOL, Respondent, Impleaded with THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.

First Department, January 16, 1920.

Master and servant — action for breach of contract employing insurance agent — requirement that agent procure satisfactory amount of new insurance during " each calendar year "— wrongful discharge within four months of appointment — evidence justifying recovery — practice — granting exception nunc pro tunc after verdict in common-law action — evidence — proof of cause for discharge other than that pleaded — damages.

Where a written contract employing the plaintiff as the agent of an insurance company for a certain district for a term of ten years provided that the plaintiff should procure a certain amount of new insurance satisfactory to the general agent and to the company during " each calendar year,"

and further provided that the contract could be terminated by the general agent or the company at any time upon written notice to the plaintiff " by reason of the failure * * * to keep and comply with any of its requirements or provisions," there was a breach of the contract for which the defendant is liable where the plaintiff was discharged after three months and a half for the reason, as stated in the written notice, that the business was " entirely unsatisfactory," even though the plaintiff had written no new insurance during that period except a policy upon his own life, but claimed to have done work within that period which led to the writing of new insurance with another company amounting to approximately $100,000.

As the action for the breach of said contract was at law and not in equity the court, having excluded evidence of grounds for the plaintiff's discharge other than the dissatisfaction of the defendant without exception by the defendant, had no power after the rendition of the verdict to grant an exception to such ruling *nunc pro tunc.*

Moreover, there would have been no virtue in the exception if it had been properly taken, as the contract of employment provided that the plaintiff should have written notice of his discharge and the reasons therefor, and hence the reasons existing in the mind of the defendant other than those expressed in the notice of discharge were immaterial and were properly excluded.

Moreover, as no other grounds justifying the discharge were stated in the defendant's pleading, evidence of such other grounds was incompetent and not in accordance with the answer where there was no attempt to amend the same.

As it was impossible for the plaintiff to prove the precise damages caused by the wrongful discharge the assessment thereof was peculiarly within the province of the jury, and a verdict for $8,500 was not excessive, there being evidence that had plaintiff been allowed to continue his employment he might have earned commissions within a year amounting to $10,000.

APPEAL by the plaintiff, Morton L. Mortimer, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 20th day of March, 1919, granting defendant's motion for a new trial and setting aside the verdict of a jury.

*Ernest G. Stevens* of counsel [*Francis Colety,* attorney], for the appellant.

*Edwin F. Valentine,* for the respondent.

MERRELL, J.:

This action was brought to recover the sum of $100,000 damages for breach of a written contract of employment

whereunder the plaintiff entered the employ of the defendant, who was the general agent of the Northwestern Mutual Life Insurance Company in the boroughs of Manhattan and The Bronx, and whereby the defendant appointed the plaintiff an agent in said boroughs to solicit applications for life insurance and to devote his time and energies solely to the interest of said defendant and the Northwestern Mutual Life Insurance Company within said territory. The compensation was to be by way of commissions on business procured by himself and by subagents whom he was authorized to appoint. The contract was dated on June 23, 1915, and by its terms was to expire on December 31, 1916. Thereafter and on or about August 31, 1915, the term of the contract was extended from December 31, 1916, until June 1, 1925. The contract so extended was delivered to the plaintiff by defendant after the same had received the approval of the insurance company on or about September 13, 1915. The contract was in writing and attached thereto and forming a part thereof were certain rules, terms and regulations with reference to plaintiff's conduct as agent and concerning many details of said employment. Among other things the contract between the parties provided as follows: " This contract may be terminated by general agent [defendant herein] or company at any time, upon written notice to agent [plaintiff herein] by reason of the failure of agent to keep and comply with any of its requirements or provisions."

The contract also contained the following provision: " Agent [plaintiff herein] shall furnish during each calendar year an amount of new insurance satisfactory to general agent [defendant herein] and company."

The evidence shows that after said contract was delivered, plaintiff, on or about October 1, 1915, undertook the performance of his duties as agent for said company thereunder. He testifies that he performed a large amount of so-called missionary work and in organizing subagencies and in laying the foundation for a successful career as the agent and representative of said insurance company. With the exception of a policy of $3,000 upon his own life, he actually wrote no insurance prior to his discharge, which occurred on January 12, 1916, although he testifies that he had several " prospects " and

secured during said period of about three months and a half life insurance of approximately $100,000, which he would have placed with the Northwestern Mutual Life Insurance Company had his employment not been prematurely severed. This insurance, amounting to approximately $100,000, he testifies that shortly after his discharge he placed with the Mutual Life Insurance Company of New York.

On January 12, 1916, plaintiff was discharged by the defendant, through a written communication signed by the defendant as general agent for the Northwestern Mutual Life Insurance Company, and by him sent to and received by the plaintiff on or about said date. The written communication was as follows:

" THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
" Jno. I. D. Bristol,
" Manager for The New York City Agencies,
" Metropolitan Building,
" Madison Avenue, 23d Street and Fourth Avenue,
" NEW YORK CITY.
" *January* 12, 1916.

" Mr. MORTON L. MORTIMER,
" 306 West 94th Street,
" City.

" DEAR SIR.— Kindly take notice of cancellation of your agency contract with me, as General Agent, of date June 23rd, 1915. Reason: Business entirely unsatisfactory.

" Please return your copy of contract, for cancellation of Company endorsement thereon, together with rate books and any other Company documents.

" Very truly yours,
" (Signed)  JNO. I. D. BRISTOL,
" *General Agent.*"

Plaintiff's discharge was thus effected in writing, in accordance with the terms of the contract between the parties, which provided that the contract might " be terminated by general agent or company at any time, *upon written notice to agent,* by reason of the failure of agent to keep and comply with any of its requirements or provisions." The reason stated for such discharge was, " Business entirely unsatisfactory."

It is the contention of the plaintiff that he was wrongfully discharged by the defendant. Plaintiff urges that while the contract states that the same may be terminated by the general agent or company at any time upon written notice to the agent by reason of the failure of the agent to keep and comply with any of its requirements or provisions, at the time plaintiff was discharged for the reason stated that the business which he had done was entirely unsatisfactory, he had not had an opportunity to demonstrate his ability to do a satisfactory business for the defendant and the insurance company which he represented. The plaintiff directs attention to the further provision of the contract, that the agent shall furnish during " *each calendar year* " an amount of new insurance satisfactory to the general agent and to the company. Upon the trial the plaintiff insisted and the court held that under the terms of the contract the agent had a full year from the time the contract was delivered to him and his entry into the service of the defendant, in which to furnish new insurance to the satisfaction of the general agent and the company. Upon the trial the court held that the words " *calendar year*," as used in the contract, meant a year of twelve months, and that defendant was unjustified in discharging the plaintiff at the expiration of three and a half months of service. The learned trial court thus eliminated from the consideration of the jury the question as to whether or not the plaintiff had been rightfully discharged, holding that such discharge was wrongful, and limiting the jury to the consideration of the amount of damages which plaintiff should recover from defendant by reason of the latter's breach of contract. The case was submitted to the jury upon the question of amount of damages, alone. The jury rendered a verdict in plaintiff's favor and against the defendant for the sum of $8,500. Defendant moved to set aside the verdict upon the usual grounds, and the court entertained said motion, reserving decision thereon. Briefs were received upon the question of the amount of damages, and also upon the construction to be placed upon the words in the contract, " calendar year." Six weeks after the rendition of the verdict the justice granted defendant's motion to set aside the same. In doing so the justice rendered a short opinion, as follows:

" *Mortimer* v. *Bristol:* What, under the circumstances, was meant by the phrase, ' calendar year,' is far from clear. Moreover, the damages are much larger than my interpretation of the evidence would warrant. However, aside from these questions, I think I was in error in excluding evidence of other grounds for plaintiff's discharge than those assigned in defendant's letter, terminating his employment. I do not find that when this evidence was excluded defendant's counsel covered my ruling by an exception, but this clearly was an oversight and one will be allowed *nunc pro tunc.* For the reason last given the verdict will be set aside and a new trial ordered."

A consideration of the reasons thus stated by the learned trial justice for his action shows that, while he was still in doubt as to the meaning of the phrase " calendar year," and while the verdict of the jury for damages was more than he thought the evidence warranted, the verdict was set aside upon the sole ground that error had been committed in excluding evidence of other grounds for plaintiff's discharge than those assigned in the defendant's letter terminating his employment.

The defendant offered to show upon the trial that there were other reasons for plaintiff's discharge than that the business which he had done was unsatisfactory. The court held that, having in writing specified the grounds of discharge, the defendant could not show that there were other reasons for plaintiff's discharge than those of which he had been notified in writing. But the court suggests that the defendant took no exception to the court's exclusion of such proof, and suggests that such neglect to except to the court's ruling was clearly an oversight on the part of the defendant, and announced that an exception would be allowed *nunc pro tunc,* and such exception was written into the record at the appropriate place. Thereupon the order appealed from was entered setting aside the verdict of the jury and granting a new trial. Plaintiff contends that in granting said order error was committed in the following particulars:

1. That the trial justice was without power to grant an exception to his ruling *nunc pro tunc* after the rendition of the verdict, and that there being no exception taken to the ruling of the trial justice excluding this evidence, the court was without power to order a new trial because of said ruling.

2. That in view of the fact that the contract specifically provided that the reason for discharge must be contained in a *written notice* to plaintiff, any such evidence as defendant sought to offer was inadmissible.

3. Even if ordinarily it could be considered admissible, said evidence could not be received without the pleadings being amended because in the pleadings plaintiff alleges that the sole reason for the discharge of plaintiff was that given in the written notice.

As to plaintiff's first contention, it seems to me that the court was powerless to grant an exception after the rendition of the verdict. The taking of exceptions at trials to rulings made is governed by sections 994 and 995 of the Code of Civil Procedure. Section 994 relates to exceptions taken after the close of a trial before a court or referee without a jury and permits an exception to a ruling upon a question of law to be made after the case is finally submitted, by filing notice of exception. Section 995 of the Code relates to exceptions at trials before a court and jury, as was the trial now under review, and provides that in such case " an exception must be taken, at the time when the ruling is made, unless it is taken to the charge given to the jury; in which case, it must be taken before the jury have rendered their verdict. It must, at the time when it is taken, be reduced to writing by the exceptant, or entered in the minutes."

The Code provision, therefore, is mandatory, and no exception may be allowed, unless taken at the time the ruling is made; or, if to the charge, then before the jury have rendered their verdict. The reasonableness of such rule is at once apparent, as the taking of an exception by a party feeling aggrieved by the ruling directs attention to the claimed error and permits the party at whose instance the error is made to withdraw incompetent proof offered or otherwise to correct his position, and the court is afforded an opportunity of modifying or correcting an erroneous ruling. The court cannot, at a time subsequent to the trial, cure the failure of a party injured by an erroneous ruling to except thereto. (*Fifth Avenue Bank* v. *Parker,* 15 N. Y. Supp. 734; *Hunt* v. *Bloomer,* 13 N. Y. 341; *Tremain* v. *Rider,* 13 How. Pr. 148.)

But it seems to me there would have been no virtue in such

exception had one been properly taken. The contract provided that the plaintiff should have written notice of his discharge. Under such provision the letter from defendant to plaintiff of January 12, 1916, was sent. Plaintiff was entitled to the reasons for his discharge in writing, and any other reasons which may have existed in the mind of the defendant which caused him to dispense with plaintiff's services are, I think, of no materiality. In defendant's amended answer herein the following allegations appear:

" X. That it was provided in and by said contract that the plaintiff, as such agent, should comply with the rules and instructions of the Company then in force or issued during the continuance of said contract, and it was further provided in said contract that the plaintiff should furnish, during each calendar year, an amount of new insurance satisfactory to this defendant and the defendant The Northwestern Mutual Life Insurance Company, and it was further provided in said contract that the same might be terminated by this defendant or the defendant The Northwestern Mutual Life Insurance Company at any time, upon written notice to the plaintiff, by reason of the failure of the plaintiff to keep and comply with any of its requirements or provisions.

" XI. That from the date of said contract and down to the date of its termination, as hereinafter set forth, plaintiff did not procure any applications of persons to be insured in said defendant Company, except one policy for $3,000 on his own life.

" XII. That by reason of the failure of plaintiff to secure new business as set forth in the preceding paragraph of this amended answer, the defendant became, was and still is dissatisfied with plaintiff's work and performance under said contract.

" XIII. That the plaintiff wholly failed and neglected to comply with and carry out the terms and provisions of said contract on his part to be performed, and to perform his duties as an agent of said defendant, as provided in said contract, in that he failed to furnish an amount of new insurance satisfactory to this defendant or to the said defendant The Northwestern Mutual Life Insurance Company, and that on the 12th day of January, 1916, by letter, a copy of which is annexed

hereto and marked ' Exhibit C,' by reason of the failure of plaintiff as aforesaid, defendant notified plaintiff that he elected to terminate said contract and did thereupon terminate the same pursuant to the provisions thereof."

In order to discharge the plaintiff under the terms of the contract and within the aforesaid allegations of his answer, he was restricted to such grounds as were stated in writing. Therefore, it seems to me that any extraneous reasons which may have existed for the discharge of the plaintiff were immaterial, and that no error was, in fact, committed by the court in excluding the same. In the state of the pleadings as they stood upon the trial, the evidence which the defendant sought to introduce was clearly incompetent and not in accordance with the allegations of his answer. No attempt was made to amend the pleadings, and the court properly excluded the testimony offered.

In support of the verdict rendered at the trial, it is further the contention of the plaintiff that the term " calendar year," as used in the contract, meant twelve calendar months and not a small part of any given year.

The interpretation of this contract as to the meaning of the term " calendar year " has been before this court. During the progress of the action defendant moved for judgment on the pleadings. The motion was heard at Special Term and was denied. The justice at Special Term rendered an opinion wherein, among other things, he said: " It does not appear that the defendant agent had a right to discharge plaintiff because he was dissatisfied with plaintiff. No such right was given by the contract and as according to the plaintiff's version the contract was in operation merely for a few months at the time of his discharge, the provision respecting the amount of new insurance to be furnished by plaintiff in each calendar year cannot be relied upon in justification of the alleged breach."

The order of the Special Term denying defendant's motion for judgment on the pleadings was affirmed in this court, without opinion. (*Mortimer* v. *Bristol*, 183 App. Div. 894.)

It is the contention of the respondent herein that the action of the court in setting aside the verdict and directing a new trial, even though the reasons stated upon which the order was granted were insufficient to justify the same, was proper,

and it is urged by the respondent that the damages assessed by the jury were excessive in amount and were not founded upon competent evidence.

In the very nature of the case, it was impossible for the plaintiff to show the precise damages which he had suffered by reason of his wrongful discharge. I think it fairly appears from the contract and the evidence in the case that defendant was not justified in discharging plaintiff, and that plaintiff, by reason of such wrongful discharge, suffered damages in some amount. While the learned justice who presided upon the trial expressed the opinion that the damages were larger than his interpretation of the evidence would warrant, nevertheless the verdict was not set aside upon that ground. The courts of this State have many times held that when it is certain that damages have been caused by a breach of contract and the only uncertainty lies in the *amount* of such damages, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 209; *Stowell* v. *Greenwich Ins. Co.*, 20 App. Div. 188.) The courts are reluctant to interfere with verdicts for damages where the evidence as to amount is uncertain and largely in the sound discretion and judgment of the jury. (*Thurston* v. *Martin*, 5 Mason, 497; 2 Suth. Dam. [4th ed.] 1492.) No fixed salary was provided by the contract employing the plaintiff in this case. His compensation depended entirely upon the success of his efforts. He was to receive a commission on business which he obtained. Had he been employed upon a salary and then wrongfully discharged, the jury could have easily estimated the damages which he sustained by reason of such wrongful discharge. He would have been entitled to receive by way of damages the amount of salary which he would have earned during the term of his contract, less what defendant might show he had earned or should have earned during the same period of time. (*Ware Brothers Co.* v. *Cortland Cart & Carriage Co.*, 192 N. Y. 439.) But in the instant case no such basis for an award of damages exists. As some evidence of the amount of loss which the plaintiff sustained by reason of his wrongful discharge, he testified to a former employment with the Northwestern Mutual Life Insurance Company as a subagent, where in one year and

nine days he had written insurance for the company to the amount of $112,800, earning commissions thereon of $1,790. He further testified that during the three months or thereabouts prior to his discharge by the defendant under his contract he had succeeded in doing the necessary work and in obtaining *bona fide* applications for life insurance of approximately $100,000; that the applications which he thus obtained were, after his discharge, accepted by the Mutual Life Insurance Company of New York, and that he received thereon commissions amounting to about $2,500. It is urged in support of plaintiff's claim that this insurance, which he had partially procured, had he not been discharged, would have gone to the company with whom he was under contract. Upon the basis that he earned commissions during the three months of $2,500, in a year's time his commissions would have amounted to $10,000. The jury allowed him at the rate of $850 a year for the ten years of his contract. It is evident that the plaintiff presented to the jury the very best evidence obtainable showing the amount of damages which he had sustained, and he should not be deprived of all damages under the authorities before mentioned because of his inability to establish by evidence some particular amount as the damages which he had suffered.

I think the order appealed from should be reversed, with costs, and that the verdict rendered by the jury should be reinstated, and that the plaintiff should have judgment thereon, together with the costs of the action.

CLARKE, P. J., LAUGHLIN, SMITH and PHILBIN, JJ., concur.

Order reversed, with costs, and verdict reinstated and judgment ordered to be entered thereon in favor of plaintiff, with costs.