ESTATE OF FRANCIS LOUIS SLADE, CAROLINE McCORMICK SLADE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21766. Promulgated November 29, 1950.

*Henry Cassorte Smith, Esq.,* for the petitioner.
*Ellyne E. Strickland, Esq.,* for the respondent.

**OPINION.**

MURDOCK, *Judge:* The Commissioner determined a deficiency of $54,798.59 in estate tax. The error assigned is the inclusion in the gross estate under sections 811 (c) or (d) of $117,762.71, representing the alleged value of the life estate of Caroline McCormick Slade under the inter vivos trust created by the decedent on January 24, 1929. The parties filed a stipulation of facts including four exhibits and four other exhibits were received and offered in evidence without objection. The stipulation and those eight documents are adopted as findings of fact.

Francis Louis Slade, the decedent. died testate on October 4, 1944, a resident of New York. Caroline McCormick Slade, his widow, is the executor of his estate. The estate tax return was filed with the the collector of internal revenue for the third district of New York.

The decedent was born on April 11, 1870. Caroline was born on July 24, 1874. They were married on October 12, 1907 and remained married to the time of the decedent's death.

The decedent created a trust on January 24, 1929. He was then 58 years of age and in good health. He transferred $500,000 face amount of bonds to the trust. A bank was named trustee of the trust. The trustee was to receive a commission.

The stated purpose of the trust was to provide for the support and care of Caroline during her life. The income of the trust was to be paid to the grantor during his life and, after his death, to his wife during her life. Caroline was given the power to terminate the trust at any time during the life of the grantor and the trust was also to terminate if the bank should resign as trustee at any time during the life of the grantor. The trust was to terminate if the grantor and his wife should both die during the life of the trust. The corpus of the trust was to be paid over to the grantor if the trust was terminated during his lifetime, but if it terminated after his lifetime, then the corpus of the trust was to go to several named charities. The trust did not contain any other provisions relating to its amendment, alteration, termination, or revocation.

A vice-president of the bank named as trustee, who signed the trust deed, wrote a letter to the decedent dated January 24, 1929, the body of which was as follows:

In connection with the Voluntary Trust which you have established with us today, I write to inform you that at any time after the death of Mrs. Slade, we will, upon written request from you, resign as Trustee so as to effect a termination of the trust.

I have given instructions that formal receipts for the wills of Mrs. Slade and yourself be sent you.

With renewed thanks for your kind consideration of us, I am  *  *  *

Caroline never exercised her power to terminate the trust and the trustee never resigned during the life of the decedent.

No part of the value of the trust property was included in the gross estate as reported in the estate tax return. One of the adjustments made by the Commissioner in determining the deficiency was the addition to the gross estate of $117,762.71 with the explanation that it was the value of the life estate of Caroline under the trust indenture dated January 24, 1929, and was included pursuant to sections 811 (c) and 811 (d) of the Internal Revenue Code.

The petitioner called an actuary as a witness. He was told of the provisions of the trust instrument, but not of the contemporaneous letter from the trustee, and then testified that there was no actuarial basis upon which to value a reversion based upon the possibility of the principal of the trust returning to the grantor on the termination of the trust either by the act of his wife or by the resignation of the trustee.

The facts known to the Commissioner and the law were different at the time of the determination of the deficiency (November 19, 1948) from the facts in the present record and the law at this time. The Commissioner did not know of the existence of the letter from the trustee agreeing to resign. His determination must be examined in the light of that fact and subsequent changes in the law. A proper inference is that the letter, from the officer of the bank to the decedent written on the day on which the trust was created, was written at the request of the decedent and formed an integral part of the whole transaction. The grantor had no power within himself to terminate the trust during the lifetime of Caroline, but he held the agreement of the trustee that it would resign at his request if he should survive Caroline. Resignation of the trustee at the request of the grantor, had he survived his wife, would have terminated the trust and would have returned the property to the grantor under the provisions of the trust instrument.

The transfer of the life estate of the wife was a transfer which took effect in possession or enjoyment at the death of the decedent within *Helvering* v. *Hallock*, 309 U. S. 106, because his death removed the possibility that her interest might be defeated and allowed it to ripen into enjoyment. The petitioner does not argue to the contrary. Consideration need be given only to the applicability of section 811 (c) (1) (C), as amended by section 7 (a) of Public Law 378, 81st Congress, Chapter 720, First Session, approved October 25, 1949, which includes in the gross estate an interest in property of which the decedent has made a transfer by trust, or otherwise, intended to take effect in possession or enjoyment at his death. Section 811 (c) (2), as amended by Public Law 378, provides that an interest in property of which the decedent made a transfer before October 7, 1949, intended to take effect in possession or enjoyment at his death shall not be included in his gross estate under paragraph 811 (c) (1) (C) unless the decedent has retained a reversionary interest in the property "arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property." It further provides that the term "reversionary interest" includes a possibility that the property transferred by the decedent may return to him.

Here there was a possibility that the property would return to the decedent and he had a reversionary interest within the meaning of section 811 (c) (2) which arose by express provisions of the trust rather than by operation of law. There were several possibilities under which the property might return to him. One was that Caroline might terminate the trust; another was that the trustee might

resign and thus terminate the trust, and a third was the possibility that the decedent might survive Caroline and request the trustee to resign, in which latter case the trustee had already agreed to resign. There is evidence that an actuary could not value the reversionary interest under the first two possibilities. But there is no evidence to indicate that the reversionary interest under the third possibility could not be valued in the way contemplated in section 811 (c) (2) or that its value immediately before the death of the decedent did not exceed 5 per centum of the value of the transferred property. The petitioner had the burden of proof. The Court must assume, therefore, that the value did exceed the necessary 5 per centum. The value of the wife's life estate is not contested. The Commissioner asks for no increased deficiency and, therefore, it is not necessary to consider whether a larger value, the value of the entire corpus, should have been included in the gross estate because the interests of the charities likewise would have been defeated if the reversionary interest had gone to the decedent.

The argument which the petitioner makes against the above reasoning is that the letter from the trustee to the decedent was without legal force and effect under New York law because it was not under seal, it was not supported by consideration, its purpose was to limit the discretionary power of the trustee, and it is not admissible under the parole evidence rule to contradict or vary the terms of the written deed of trust, and it has no effect under 811 (c) (1) (C) because the reversionary interest would arise by operation of law rather than by the express terms of the instrument of transfer. The stated purpose of the trust was to provide for the support and care of Caroline during her life, but the income of the trust was paid to the grantor for his life. The trustee could terminate the trust by resigning and in that case the corpus would revert to the grantor. But the deed contains no statement of any circumstance under which the trustee would be expected to resign. However, the death of Caroline during the life of the grantor would be a logical time for the trustee to resign and thus terminate the trust because then there would be no further occasion to provide for the support and care of Caroline during her life. The letter set forth the agreement between the trustee and the decedent that the trustee would resign upon request of the decedent at any time after the death of Caroline. That letter did not contradict or vary any term of the deed of trust but was entirely consistent with those terms. It was a part of the whole agreement of the parties whereby the trust was created and merely supplied one part of the agreement which was not expressed in the trust instrument. The entire agreement of the parties was not complete without the letter. The consideration involved in the transaction applied to the letter just as it applied to the

other parts of the agreement. No one was in position to complain if the trustee resigned after the death of Caroline. The charities would be the only beneficiary affected. The trustee was not restricted in its right to resign and could have resigned at any time without request. The charities claimed under the same agreement which gave the trustee that unlimited right to resign, carrying with it the return of the property to the decedent, and they had no right to complain that the grantor had an agreement with the trustee that it would resign in case Caroline predeceased him. The reversionary interest of the decedent arose by express provisions rather than by operation of law. No sound reason has been advanced why the letter was not effective for the purpose for which it was intended or why it should not be recognized as valid for Federal estate tax purposes.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

VAN FOSSAN, *J.*, dissenting: In my judgment the opinion of the majority falls into basic error in holding that the letter of the trustee to the grantor must be read as an integral part of the trust agreement, thereby paving the way for the further holding that the grantor had a reversionary interest "arising by the express terms of the instrument of transfer and not by operation of law." I think this conclusion is clearly contrary to the facts and does violence to all principles of construction. I find no shred of evidence on which to base such a finding. The trust agreement was complete in itself and determinative of the rights of the parties.

The basic error above pointed out leads to a second error, namely, the assumption, based on a lack of proof, that the reversionary interest "exceeds 5 per centum of the value of such property." In my opinion, there is wholly adequate proof that the interest was not susceptible of valuation. For the above reasons, I must dissent.

ARUNDELL and JOHNSON, *JJ.*, agree with this dissent.

———

BLACK, *J.*, dissenting: The correctness of the majority opinion, as I view it, depends entirely on the construction of the letter written by the corporate trustee on the same date the trust was executed. This letter was signed by the same corporate officer who signed the trust instrument. If the letter is merely collateral and suppletory, then it may be read as a part of the trust instrument. *Stowell* v. *Greenwich Life Ins. Co.*, 163 N. Y. 298, 57 N. E. 480, reversing 20 App. Div. 188, 46 N. Y. Supp. 802. If the trust instrument without the letter does not convey a definite meaning without contradiction or ambiguity, then

such interpretation shall be drawn from its contents and all available facts and the fair inferences to be drawn therefrom. *Donavin* v. *Thurston*, 190 App. Div. 48, 179 N. Y. Supp. 473.

I think the trust instrument was complete and conveyed a definite meaning without contradiction or ambiguity. The crucial letter herein amounts to a power of revocation exercisable on the wife's death. Why is it said that the letter supplies a missing point in the trust instrument, for a trust does not have to be revocable? In Scott on Trusts, Vol. 3, section 332, p. 1813, is found the following statement:

\* \* \* Under the parol evidence rule, where the terms of the trust are declared in a written instrument, extrinsic evidence is not admissible to contradict or vary it, in the absence of fraud, duress, mistake or other ground for reformation or rescission. In accordance with this general principle, it is held that where the omission to reserve power of revocation was not due to mistake or fraud or duress, the settlor cannot revoke the trust. \* \* \*

In the instant proceeding we have a statute, the Technical Changes Act, that requires the reversionary interest be one "arising by the express terms of the instrument of transfer \* \* \*." I cannot see how this letter is a part of the trust instrument. The majority opinion says that it supplies one part of the agreement not expressed in the trust instrument—doesn't this necessarily mean that it was not part of the trust instrument and the reversionary interest claimed to be subject to taxation does not, therefore, arise by the express terms of the instrument of transfer? That is the way I view it and I, therefore, respectfully dissent from the majority opinion.

ARUNDELL, VAN FOSSAN, and JOHNSON, *JJ.*, agree with this dissent.