**MOHAWK AGENCY, INC., Plaintiff,**

**v.**

**AMERICAN CASUALTY COMPANY, Defendant.**

**Civ. No. 7744.**

United States District Court
N. D. New York.

Feb. 11, 1964.

Carroll, Williams, Rulison, Conan & Ryan, Syracuse, N. Y., John B. Carroll, John F. K. Cassidy, Syracuse, N. Y., of counsel, for plaintiff.

Sugarman, Wallace & Manheim, Syracuse, N. Y., Milton Wallace, Charles Manheim, Syracuse, N. Y., Thomas P. Curtin, Reading, Pa., of counsel, for defendant.

BRENNAN, Senior District Judge.

This diversity action is brought to recover money damages based upon the acts of the defendant which brought to an end the business relationship of the parties in alleged violation of the terms of a written agency agreement. The underlying facts are not in serious disagreement and are set out in narrative form below.

The plaintiff is a corporation incorporated in 1949 and principally engaged in the solicitation of casualty and fire insurance business at Utica, New York. Samuel DeTraglia and Edgar Palazzo and their wives were the stockholders of the company and the business transacted came under their personal supervision. About March 1955 a representative of the defendant interviewed the plaintiff with the purpose of exploring the possibility of a business arrangement whereby plaintiff would become the agent of the defendant in the matter of the solicitation of applications for insurance policies to be written by the defendant. It is sufficient to say that the negotiations terminated in a written agency agreement dated April 19, 1955.

The agency agreement, which seems to be in the usual form, in effect constituted the plaintiff as the agent of the defendant for the purpose of procuring applications for insurance policies in the vicinity of Utica, New York. It provided compensation to the plaintiff at substantially 20% of the premium collected upon the policies issued by the defendant upon the applications submitted to it. There is no provision which requires the plaintiff to submit any and all applications to the defendant. In other words, plaintiff could solicit the same type of insurance and submit the applications therefor to other companies with whom it had an agency agreement. Likewise the defendant was not obliged to accept the applications submitted by the plaintiff or to issue the requested policies or any renewal thereof. The crux of this controversy arises out of the provision of the agreement as follows. "Either party may terminate this agreement at any time by notice in writing". The above agreement was superseded by a similar agreement dated October 1, 1956 which is in all respects similar to the previous agreement except that plaintiff's commission was fixed at 25%. The agreement also contained a profit-sharing agreement which is not involved here. The details of the business transactions, in pursuance to the above agreements, are unnecessary.

On November 17, 1957, the representatives of the defendant called at the office of the plaintiff at Utica, New York, orally advised that they were instructed to terminate the relationship that had existed between the parties and that they were acting under the instructions of the home office. The defendant's agents requested and received the supplies furnished by the defendant to the plaintiff, terminated and received all indications of plaintiff's authority to act as defendant's agent and instructed the plaintiff to pick up all December renewal policies which had been previously mailed to plaintiff's clients. The plaintiff has had no further business relationship with the defendant except to close their accounts and to act as agent of the defendant in the matter of Special Trip Policies authorized under an agreement of December 1, 1957.

Plaintiff's contention here is to the effect that the agency agreement was not terminated in accordance with its terms and that defendant is liable in damages because, by its action, the agreement has been rendered impossible of performance and that the act of its representative on November 17, 1957 constituted a breach thereof.

There are several matters relative to the pleadings which may be disposed of here. Plaintiff's complaint appears to seek a reformation of the contract or agreement so as to provide that same would not be cancelled without cause and without reasonable notice. The evidence offered is insufficient to allow such reformation. A considerable portion of the evidence was directed to conversations and statements made by the representatives of the defendant prior to the

signing of the 1955 agreement. There is an entire lack of authority of such representative to bind the defendant and additionally there is the 1956 contract which would appear to be the basis of this action. Any cause of action for the reformation of the contract is dismissed for failure of proof.

Insofar as the complaint appears to allege that the relationship of the parties was terminated by reason of a common scheme involving the race or national origin of the clients of the plaintiff is likewise denied for failure of proof.

The claim for exemplary damages is likewise dismissed as lacking any foundation in the evidence.

The second cause of action which seeks a recovery on account of loss experience has been withdrawn and is dismissed.

The answer, insofar as pertinent here, admits the status of the parties insofar as diversity and the business relationship of the parties are concerned. It denies the essential allegations of the complaint as to liability and alleges as affirmative defenses (1) waiver and estoppel by the plaintiff to assert the present claim; (2) mutual rescission of the agency agreement; (3) a custom and usage in the insurance business authorizing an oral cancellation of the agreement; (4) and laches on the part of the plaintiff in asserting this cause of action.

■■ That the actions of the defendants on November 17, 1957 did not effectively terminate the agency agreement is not seriously disputed. The agreement provided in unequivocal terms that a "notice in writing" was required to accomplish such termination. "But where as here the parties have agreed to a termination clause, the clause has been enforced as written". A. S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369 at 382, 165 N.Y.S.2d 475 at 486, 144 N.E.2d 371 at 379 and cases cited. The provision of the agreement contains no ambiguity and the court is limited to giving effect to the expressed intent of the parties. Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N.Y. 20 at 25, 119 N.E.2d 573. Defendant's recognition and understanding of such provision is shown by its written notice given to the plaintiff in the matter of the termination of an agreement with plaintiff in 1954. The 1954 agreement, which is not here involved, contained the identical provision as to its termination as is found in the agreement underlying its litigation. Here the power to terminate by either party to the agreement was unqualified and unmistakably expressed. Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675; Rubinger v. International Tel. & Tel. Corp., D.C., 193 F.Supp. 711 at 718. It is no answer to say that the oral notice accomplished the same result as if the required written notice had been given not only because the parties agreed upon the method to be used but the New York statute provides that such provision may not be waived except by a notice in writing signed by the party against whom the waiver is sought to be enforced. Personal Property Law, § 33–c, subdivision 4, now General Obligations Law, McK. Consol. Laws, c. 24–A, § 15–301, subdivision 4.

■■ The above statute, by its terms, eliminates the affirmative defenses of waiver and termination by custom and usage, which in any event are not supported in the evidence. Even if the defense of estoppel is not thereby eliminated, Meadow Brook National Bank v. Feraca, 33 Misc.2d 616, 224 N.Y.S.2d 846, it fails as a defense because of lack of evidence. The same conclusion applies to the defense of mutual rescission. The plaintiff's letter of April 4, 1958 goes no farther than to recognize the status of the services contemplated by the agreement. This court sees no basis for the application of the legal doctrine or principle of laches.

It is plainly inferable that the defendant itself recognized that the agreement was not terminated on November 17, 1957. Section 116 of the New York Insurance Law, McK. Consol. Laws, c. 28 provides that every insurer, upon the termination of the appointment of an agent representing it in the state shall

*forthwith* file a statement of such termination with the superintendent of insurance. Here we find that such notice was filed by the defendant on July 2, 1958 giving the effective date of the termination of plaintiff's agency as June 12, 1958.

■ It follows that the action of the defendant of November 17, 1957 prevented the performance of the services contemplated to be performed by the plaintiff under the terms of the agreement and that defendant is liable for the resulting damage.

■■ The existence and amount of plaintiff's damage is the most troublesome question in this litigation. Here the plaintiff was not obligated to place any applications for insurance with the defendant and the defendant was not obligated to accept the application or issue the requested policies or any renewals thereof. Early cases may be found which refuse to enforce such an agreement for lack of mutuality but as Judge Bryan stated in Rubinger v. International Tel. & Tel. Corp., supra, 193 F.Supp. at 717, it is now settled that they are sufficiently definite to be enforced. Sylvan Crest Sand & Gravel Co. v. United States, 2 Cir., 150 F.2d 642. Here the plaintiff shall collect all premiums due and remit same to defendant whether collected or not and is subject to the rulings and instructions of the defendant. Likewise the defendant is obligated to pay the commission upon policies issued and it is implied that defendant will use an honest judgment and act in good faith in considering and acting upon submitted applications. Jay Dreher Corp. v. Delco Appliance Corp., 2 Cir., 93 F.2d 275. "That an agreement to perform under a contract is implied rather than express makes it no less real". Helsley v. St. Paul Hospital & Casualty Co., D.C., 195 F.Supp. 385 at 390.

■ The nature of the breach of the agreement here makes it difficult to determine and apply a measure of plaintiff's damage. No case is cited or found that is particularly helpful. The general rules are not in dispute but the application of

same to the present agreement and under the circumstances disclosed without doubt involves a measure of speculation. Plaintiff's financial loss is the ultimate measure of its damage and the following quotation taken from Mortimer v. Bristol, 190 App.Div. 452 at 461, 180 N.Y.S. 55 at 61, is applicable here. "The courts of this state have many times held that when it is certain that damages have been caused by a breach of contract and the only uncertainty lies in the amount of such damages, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. Wakeman v. Wheeler [& Wilson] Mfg. Co., 101 N.Y. 205, 209, 4 N.E. 264; Stowell v. Greenwich Ins. Co., 20 App.Div. 188, 46 N.Y.S. 802".

Here damages exist without doubt. The plaintiff was required, in order to retain his clients, to place the applications and renewal policies through another company at a ten percent loss in its commission upon the premium charged and paid. Uncertainty enters the picture because there is no expressed requirement that defendant would accept the proffered renewals or applications. This court is aware of the decisions which have denied a recovery because the damages are too speculative or lack a rational basis. The principle is referred to in James Wood General Trading Establishment v. Coe, 2 Cir., 297 F.2d 651 at 658. Several such decisions are referred to and discussed in the dissenting opinion in Stanley Trading Co., Inc. v. Bensdorp, Inc., 278 App.Div. 641, 102 N.Y.S.2d 887. It is held that they do not apply here since later decisions seem to be more liberal in allowing damages to prevent the wrongdoer from profiting from his act. The Supreme Court in Bigelow v. R K O Radio Pictures, 327 U.S. 251, at page 265, 66 S.Ct. 574, at page 580, 90 L.Ed. 652, cited in Spitz v. Lesser, 302 N.Y. 490, 99 N.E.2d 540 used the following language. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of uncertainty which his own wrong has created".

750

No reported decision is cited or found which is helpful in fixing a measure of damage here. Damages have been awarded in a breach of an agency agreement. Stowell v. Greenwich Ins. Co., 20 App.Div. 188, 46 N.Y.S. 802. The above decision however affords no help. The evidence offered by plaintiff on this subject is unsatisfactory and possibly incomplete. The fault may rest partially with the court since the measure of damage to be applied in case liability was found was not indicated during the course of the trial. It is determined that this court will base the damages to be awarded upon plaintiff's premium loss. This would amount to ten percent of the premium earned upon policies issued. Varying figures were testified to as to plaintiff's premiums earned upon casualty policies in 1957, 1958, 1959 and 1960. Most of such testimony is not persuasive although not contradicted. There is however no evidence that the action of the defendant of November 17, 1957 was based upon a high percentage of loss resulting from the policies written through plaintiff's agency. It would therefore seem to follow that defendant, exercising honest judgment and good faith, would renew its policies in force on the date of the breach of the agreement. The accountant testifies that approximately $30,000. in premiums was earned in 1958 from policies issued by the defendant and renewed in another company. Using that figure, it is evident that plaintiff's loss is $250 per month for such period of time as may be reasonably determined.

It is true the above measure of damage does not take into consideration new business which was actually written or obtained by plaintiff. "If there was hardship here, it was due to the contract itself and to its failure to afford the plaintiff more adequate protection against termination". Shain v. Washington Nat. Ins. Co., 8 Cir., 308 F.2d 611. On the other hand, the contract does not make the acceptance of renewals obligatory on the defendant so that same may be considered as a subsisting right but defendant's obligation to act in good faith upon new applications submitted by plaintiff would counterbalance the rejection of any renewals submitted to it.

Assuming that the above measure of damages is permissible, it remains to determine the time period to which it should be applied.

Defendant's action prevented the performance of the agreement commencing November 17, 1957 so that we may start with that date. We have no trouble extending the period to June 12, 1958 because defendant itself recognized the existence of the agreement until that date. This of course does not bind the plaintiff who was prevented from performing the obligations of the agreement and reaping the benefits therefrom. How much longer can it be fairly said that in the ordinary course of business the policy holders in 1957 could be expected to renew their policies? The answer is pretty much a guess. Policy holders die; they become disabled; they move from the locality; they purchase new vehicles and insurance coverage becomes a required part of the process of refinancing; they become involved in accidents which stamp them as unacceptable risks; the members of their families become operators at an age which increases the risk and they may withdraw their patronage from plaintiff with or without a reason. All of the above indicates that the measure of damage adopted may not be applied for an indefinite time. The agreement here had no time assurance of legal life and its expectancy value is thereby limited. In re Petroleum Carriers Co., D.C., 121 F.Supp. 520 at 527. Plaintiff commenced this action August 24, 1959 and that such a course was to be taken must have been determined by August 1, 1959. This court will find damages determined as above up to that date. The above will constitute the findings of this court.

One of the litigants states that the court, during the course of the trial, indicated that additional evidence on the question of damages would be received after the question of liability had been determined. The court has no specific recollection in the matter but application

to reopen the case to receive such evidence may be made within fifteen days from the date of this decision.

It is concluded that plaintiff is entitled to damages from the defendant in the amount of Five Thousand One Hundred Twenty-Five Dollars ($5125.00) and judgment is directed accordingly.

So ordered.